64 F.3d 666
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Charnjit SINGH, aka Charandes Singh, Petitioner-Appellee,
v.
David ILCHERT, in his capacity as District Director for the
United States Immigration & Naturalization
Service, Respondent-Appellant.
 No. 94-15104.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 9, 1995.
Decided Aug. 22, 1995.
 
 Before: GOODWIN and SCHROEDER, Circuit Judges, and TASHIMA* District Judge.
 MEMORANDUM**
 Petitioner-appellee Charnjit Singh ("Singh") is a Sikh who attempted to enter this country illegally from India. He filed a habeas corpus petition in district court after the Immigration and Naturalization Service ("INS") deemed him excludable and denied his applications for asylum pursuant to 8 U.S.C. Secs. 1101(a) & 1158(a) and withholding of deportation pursuant to 8 U.S.C. Sec. 1253(h). The district court held that Singh had established that he had suffered past persecution on account of political opinion within the meaning of the applicable statutes and Ninth Circuit case law and remanded to the Bureau of Immigration Appeals ("BIA") for further proceedings.
 This appeal raises the same questions of law we decided today in a companion case, Harpinder Singh v. Ilchert, Nos. 94-15110 and 94-15111 ("Harpinder Singh "). As in Harpinder Singh, we review de novo the BIA's application of law to undisputed facts. Because the BIA proceeded to the merits of Singh's claim without discussing Singh's credibility, this court presumes that the BIA found the petitioner credible. Damaize-Job v. INS, 787 F.2d 1332, 1338 (9th Cir.1986) ("[W]hen the Board's decision is silent on the question of credibility, and the Board has fully explained the rationale behind its decision, we will presume that the Board found the petitioner credible, and proceed to review the Board's decision.").
 I. FACTUAL AND PROCEDURAL BACKGROUND
 The facts of Singh's case are drawn from the district court's statement of facts in its order granting Singh's petition for habeas corpus, which in turn is based on Singh's credible testimony before the Immigration Judge ("IJ").
 Singh is a native and citizen of India. Before leaving India, he was employed in a mechanical repair shop and also worked as a farmer and cattle owner. As a member of the Akali Dal, a non-violent political party, Singh advocated the creation of a separate Sikh state, Khalistan, through non-violent means.
 In 1988, Sikh militants visited Singh at his home and asked him to "go with them." Singh testified that militant separatists forced him to deliver their letters to various villages. When one of the militants subsequently was arrested, he gave Singh's name to the police, who stopped and arrested Singh while he was traveling on the highway. The police transported Singh to the Ludhiana Police Station, where he was held for several months.
 While he was detained, Singh was beaten by the police periodically. The police suspended Singh in the air, stretched his legs apart, beat him on the chest with sugar cane stalks, and applied electric shocks to his upper and lower torso. During these beatings the police accused Singh of being a terrorist and interrogated him about the Sikh militants. Singh denied that he was a terrorist and told the police that he had been coerced into helping the militants.
 The police later charged Singh with giving shelter to the militants, a charge that Singh denied. Singh was released only after posting a 10,000 rupee bond. The charge of sheltering the Sikh militants is pending against him today. After his release, the police continued to harass him. Singh was repeatedly arrested, beaten, questioned and then released by the police.
 The following year, during the summer of 1989, the police raided Singh's home while he was away. The police had a warrant to arrest Singh on charges of having stolen a weapon. When he discovered the police were looking for him, Singh voluntarily appeared before a judge. He later was tried and acquitted of the weapons charge.
 Because he was afraid that the police would harm him, Singh asked the judge to revoke his bail so that he could be held in the protective custody of the judge. Singh remained in jail for nine months. While he was in jail, the Sikh militants visited his home and asked his family to repost Singh's bail so that he could be released to assist them.
 Following government elections, Singh eventually decided to leave jail, believing that conditions in the Punjab had improved and become more safe. He reposted a bond and returned home. Six days later, the police came to Singh's home, prompting him to flee to a relative's house. Fifteen days after Singh's release from jail, Sikh militants also visited his home. Singh feared for his life because two Akali Dal members from his village had been killed in encounters with the police in December 1990. Like Singh, these men had also been accused of sheltering militants.
 Singh remained in hiding for a year and a half, alternating between relatives' homes in Delhi and Uttar Pradesh. During this period, the police repeatedly visited his family to inquire of his whereabouts. Singh's father was arrested twice for failing to bring Singh to the police, and was held in custody for one month on one occasion and for fifteen days on the other. Because Singh believed that he could be arrested and killed at any time, and at the urging of his family, he fled from India in March, 1991.
 Singh arrived at San Francisco International Airport on May 15, 1991. He was immediately arrested by INS Officers and charged with being excludable pursuant to Immigration and Nationality Act Sec. 212(a)(7)(i)(I).
 II. DISCUSSION
 Relying solely upon the BIA's majority opinion in Matter of R, Int.Dec. 3195 (BIA 1991), the BIA employed faulty legal analysis in assessing petitioner's persecution claim. As in Harpinder Singh, the BIA ignored Ninth Circuit authority that holds that extra-judicial punishment of suspected anti-government guerillas can constitute persecution on account of imputed political opinion. Viewing the undisputed facts in light of the legal principles announced in Blanco-Lopez v. INS, 858 F.2d 531, 533 (9th Cir.1988), Maldonado-Cruz v. Dept. of Immigration and Naturalization, 883 F.2d 788, 792 (9th Cir.1989), and Ramirez Rivas v. INS, 899 F.2d 864, 867-68 (9th Cir.1990), judgment vacated on other grounds, 112 S.Ct. 858 (1992), we hold that Singh has established past persecution on account of imputed political opinion.
 Because petitioner has suffered past persecution, the regulations presume that his life or freedom would be threatened on return to India. 8 C.F.R. Sec. 208.16(b)(2). The INS has fallen far short of rebutting that presumption, and the issue of country-wide persecution ought not be considered in this inquiry. See Harpinder Singh. Petitioner therefore qualifies for mandatory withholding of deportation.
 We remand to the district court with instructions to remand to the BIA for the exercise of discretion in accordance with our holding in Harpinder Singh in considering Singh's asylum claim. We note that petitioner presented credible testimony that when he fled the Punjab to live in other parts of India, he lived fearfully and in hiding. In fact, while Singh was in hiding, his father was twice arrested and detained for failing to bring his son to the police. In the face of this evidence, the INS failed to present any evidence that petitioner, a suspected Sikh "militant," could live safely in other parts of India.
 Singh demonstrated eligibility for both withholding of deportation and asylum. The district court correctly held that Singh had shown past persecution on account of political opinion. There was no need for the district court to order the BIA to conduct further proceedings on the question of conditions in the country of India. See Harpinder Singh.
 The judgment of the district court is affirmed in part and reversed in part and the matter is remanded to the district court for entry of a judgment granting Singh withholding of deportation and directing the BIA to exercise discretion in determining whether Singh should be granted asylum.
 AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
 
 
 
 *
 The Honorable A. Wallace Tashima, United States District Judge for the Central District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3