66 F.3d 336
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Raj Kumar SINDHU, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 94-70056.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 9, 1995.
Decided Sept. 13, 1995.
 
 Before: GOODWIN and SCHROEDER, Circuit Judges, and TASHIMA,* District Judge.
 MEMORANDUM**
 Petitioner-appellant Raj Kumar Sindhu ("Sindhu") is a Sikh from India who entered the United State without inspection. He conceded deportability and filed an application for asylum pursuant to 8 U.S.C. Secs. 1101(a) & 1158(a) and withholding of deportation pursuant to 8 U.S.C. Sec. 1253(h). The Immigration Judge ("IJ") denied Sindhu's application for asylum and withholding. Singh appealed to the Board of Immigration Appeals ("BIA"), which affirmed the denial of his application.
 This appeal raises the same questions of law we recently decided in Harpinder Singh v. Ilchert, --- F.3d ----, 1995 WL 502906 (9th Cir. Aug. 22, 1995) ("Harpinder Singh "). In this case, the BIA avoided a determination of credibility and based its decision on the application of law to Sindhu's account of the facts. As in Harpinder Singh, we review de novo the BIA's application of law to undisputed facts.
 FACTUAL AND PROCEDURAL BACKGROUND
 Sindhu is a 31-year-old Sikh man who is a native and citizen of India. With the exception of several years at a university in the Punjab, he lived in the town of Jind in the state of Haryana, where Sikhs are a minority and Sindhu's father was president of the local Sikh temple. Sindhu holds a Masters Degree in English Literature and was the principal of four schools.
 At least since his time at university, Sindhu has opposed the Indian government's denial of greater Sikh autonomy. He was an active member of the All India Sikh Student Federation ("AISSF") and he continued to participate with this group after his return to Jind. Sindhu testified that he belonged to a faction of the AISSF that opposes terrorism and claims that the focus of all meetings that he attended was peaceful. Sindhu's cousin, Kuldip Singh ("Singh"), also was a member of the AISSF at the university along with Sindhu. Singh apparently approved of terrorist action in support of Sikh autonomy, but Sindhu has no knowledge that Singh actually was involved with terrorism or that the police had ever detained or questioned Singh. Singh disappeared in the Punjab in June, 1991.
 In May, 1992, Sindhu was taken to a police station by police officers. He describes being stripped, beaten and threatened as police questioned him concerning his cousin. Sindhu reports that he was held for three nights and was moved, blindfolded and handcuffed, to various locations during this time. He claims that the beatings, threats and questioning continued periodically throughout the detention. The police accused him of knowledge of and involvement in Sikh terrorist activities and stated that his cousin had already joined the terrorists. They also claimed to have information on Sindhu's terrorist involvement from a student who had given his name. After three days, Sindhu was released, unable to walk, but the police warned that he would be watched. Sindhu's family had reported his absence to the police who had denied that he was in custody. Sindhu returned to work after approximately a month of recuperation.
 Sindhu reports that he again was detained in August, 1992, and the police again claimed to have knowledge of his terrorist involvement. He asserts that he was beaten, taken to a river where he was repeatedly immersed in water until he passed out, threatened with death if he did not provide information, and hung by his hands from the ceiling. Sindhu states the police also threatened that they could bring him back if he did not cooperate or left the area. He was told that if he did not cooperate, he could be killed like his cousin.
 Sindhu claims that he was released after he told the police that he would cooperate with them by obtaining information from students. Three weeks later, when he had not provided any information, the police stopped him and threatened him with detention if he did not provide information within one week. Sindhu went into hiding at the homes of relatives and a Hindu politician. He reports that some of his former hiding places and the homes of many relatives were searched. Sindhu testified that after he left India, a brother and another cousin were detained by the police.
 Sindhu left India with the aid of a smuggler, traveling through Nepal to Canada, where he stayed from December, 1992 until he entered the United State without inspection on March 19, 1993. Deportation proceedings were commenced against him on March 24, 1993. Sindhu conceded deportability and filed an application for asylum and withholding of deportation. The IJ denied Sindhu's application for asylum and withholding of deportation in an order dated July 13, 1993, largely on credibility grounds. On January 11, 1994, the BIA affirmed the denial of petitioner's application and granted voluntary departure. Sindhu then timely filed this petition for review.
 DISCUSSION
 The BIA held that, even if it fully credited Sindhu's account, "we would nonetheless find that the respondent would not prevail on his persecution claim under the analysis set forth in Matter of R, Interim Decision 3195 (BIA 1992), which we find governs this case." As in Harpinder Singh, the BIA relied solely on the majority opinion in Matter of R and ignored Ninth Circuit authority holding that extra-judicial punishment of suspected anti-government guerrillas can constitute persecution on account of imputed political opinion. In light of the legal principles announced in Blanco-Lopez v. INS, 858 F.2d 531, 533 (9th Cir.1988), Maldonado-Cruz v. Dept. of Immigration and Naturalization, 883 F.2d 788, 792 (9th Cir.1989), and Ramirez Rivas v. INS, 899 F.2d 864, 867-68 (9th Cir.1990), judgment vacated on other grounds, 112 S.Ct. 858 (1992), we hold that Sindhu's account of the facts, if credited, is sufficient to establish past persecution on account of imputed political opinion and eligibility for asylum.
 If Sindhu suffered past persecution, the regulations establish a presumption that his life or freedom would be threatened on return to India. 8 C.F.R. Sec. 208.16(b)(2). The Immigration and Naturalization Service has fallen far short of rebutting that presumption, and the issue of country-wide persecution ought not be considered in this inquiry. See Harpinder Singh. If his account is credited, Sindhu qualifies for mandatory withholding of deportation.
 Although Sindhu is eligible for relief if his account is credited, we remand to permit the BIA to determine credibility. Canjura-Flores v. INS, 784 F.2d 885, 889 (9th Cir.1985) ("We will continue to remand to the Board for credibility findings when we reverse a decision in which the Board has avoided the credibility issue by holding that a petitioner has failed to establish either a well-founded fear of persecution or a clear probability of persecution even if his testimony is assumed to be credible.").
 The judgment of the BIA is reversed and the matter remanded to the BIA for a determination of credibility and the exercise of discretion in accord with our decision in Harpinder Singh.
 REVERSED and REMANDED.
 
 
 
 *
 The Honorable A. Wallace Tashima, United States District Judge for the Central District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3