92 F.3d 1195
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Kulwinder Singh WRAICH, Petitioner-Appellant,
v.
Thomas SCHILTGEN; Immigration and Naturalization Service,
Respondents-Appellees.
 No. 95-16308.
 United States Court of Appeals, Ninth Circuit.
 Submitted July 12, 1996.*
Decided July 23, 1996.
 
 1
 Before: O'SCANNLAIN and LEAVY, Circuit Judges; HUFF,** District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 Kulwinder Singh Wraich, a 33-year-old native and citizen of India and a practitioner of the Sikh religion, appeals the district court's denial of his 8 U.S.C. § 1105a(b) habeas petition, which challenges the Board of Immigration Appeals' ("BIA") dismissal of his appeal from an Immigration Judge's ("IJ") decision finding him excludable as charged and denying his applications for asylum and withholding of deportation pursuant to 8 U.S.C. §§ 1158(a) & 1253(h).
 
 
 4
 * Under 8 U.S.C. § 1158(a), the Attorney General has discretion to grant an alien asylum if the alien is determined to be a "refugee." See 8 U.S.C. § 1158(a) (1988). A refugee is defined as any person who is unable or unwilling to return to his or her country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A).
 
 
 5
 An alien, such as Wraich, who cannot establish past persecution may attempt to qualify for asylum by showing a well-founded fear of future persecution. Surinder Singh v. Ilchert, 69 F.3d 375, 378 (9th Cir.1995). The "well-founded fear" standard has both objective and subjective components. The subjective component may be satisfied by "an applicant's credible testimony that he genuinely fears persecution." Acewicz v. INS, 984 F.2d 1056, 1061 (9th Cir.1993) (citation omitted). The objective component "requires a showing by 'credible, direct, and specific evidence' of facts supporting a reasonable fear of persecution" on the relevant ground. Id. (quoting Rodriguez-Rivera v. INS, 848 F.2d 998, 1002 (9th Cir.1988) (per curiam)).
 
 
 6
 To qualify for withholding of deportation under 8 U.S.C. § 1253(h)(1), Wraich would have to present "concrete evidence that the probability of persecution is 'more likely than not.' " Nasseri v. Moschorak, 34 F.3d 723, 728 (9th Cir.1994) (citation omitted), overruled on other grounds, Fisher v. INS, 79 F.3d 955, 963 (9th Cir.1996) (en banc).
 
 
 7
 On appeal, Wraich contends that he is entitled to asylum and withholding of deportation because he faces extrajudicial punishments based on political opinions imputed to him by the Indian government. We are not persuaded.
 
 
 8
 A political opinion is imputed when "[a] persecutor falsely attributes an opinion to the victim, and then persecutes the victim because of that mistaken belief about the victim's views." Canas-Segovia v. INS, 970 F.2d 599, 602 (9th Cir.1992) (citation omitted); see id. at 601 ("Imputed political opinion is still a valid basis for relief after Elias-Zacarias [112 S.Ct. 812 (1992) ]."). Here, there is no evidence that the Indian government persecuted Wraich because of political opinions falsely imputed to him. On the contrary, the undisputed facts clearly establish that the Indian government sought to question Wraich in connection with a legitimate criminal investigation concerning two kidnappings and a murder.
 
 
 9
 Wraich maintains that he never joined a militant Sikh organization, but that he provided food, transportation, and money to Sikh militants who approached him. On one occasion, militants asked Wraich to identify the homes of four wealthy Hindu families in his village; Wraich refused, but his servant (acting alone) apparently provided the information. The militants later kidnapped two Hindu boys and killed the village's "home guard." Fearing arrest, Wraich fled. Three days after the murder, the police searched Wraich's home, but found no illegal documents or weapons. Wraich was neither arrested, tortured, interrogated, nor threatened by the Indian police. By his own admission, the police attempted to contact him only after the kidnapping and murder in his village.
 
 
 10
 This court has repeatedly distinguished legitimate criminal investigations from extrajudicial punishments. For example, in the following cases relied upon by Wraich, this court granted relief under the doctrine of imputed political opinion only after determining that the government was not conducting a legitimate criminal prosecution. See, e.g., Surinder Singh, 69 F.3d at 379 ("There is no evidence in the record to suggest that the harm inflicted on Singh by the police resulted from a legitimate government investigation or criminal prosecution."); Harpinder Singh v. Ilchert, 63 F.3d 1501, 1509 (9th Cir.1995) ("... Singh was not the target of any legitimate government prosecution."); Maldonado-Cruz v. INS, 883 F.2d 788, 792 (9th Cir.1989) ("Maldonado's fate at the hands of the El Salvador military would ... be persecution rather than legitimate criminal prosecution."); Blanco-Lopez v. INS, 858 F.2d 531, 534 (9th Cir.1988) ("We find no evidence in the record ... that an actual, legitimate, criminal prosecution was initiated against Blanco-Lopez....").
 
 
 11
 In addition, Wraich's reliance on Ramirez Rivas v. INS, 899 F.2d 864 (9th Cir.1990), vacated on other grounds, 112 S.Ct. 858 (1992), is misplaced. Although the Ramirez Rivas court directed the BIA to grant Ramirez' petition for withholding of deportation because she would likely be persecuted on account of imputed political opinion, id. at 867, the court based this conclusion on an extreme factual scenario that is not present here. Unlike Wraich, Ramirez belonged to a family whose well-known anti-government activities led to repeated persecution by the Salvadoran death squads. The death squads tortured, wounded, and executed several members of her family, including some who were not guerrillas. The court concluded that the death squads would likely target Ramirez not only because of the pattern of persecution against her family, but also because of her youth (the squads often singled out young women for persecution) and her publicly recorded visits to political prisoners before leaving El Salvador. Finally, unlike Wraich, the Salvadoran government's interest in Ramirez could not be tied to a specific, legitimate criminal inquiry.
 
 
 12
 In short, although Wraich may genuinely fear persecution, his fear is not objectively reasonable. The record simply does not compel the conclusion that Wraich has a well-founded fear that the Indian government will persecute him because of an imputed political opinion. See INS v. Elias-Zacarias, 112 S.Ct. 812, 816 (1992).
 
 
 13
 Since Wraich fails to satisfy the lesser burden of proof required for asylum, the district court did not err in finding that Wraich would also fail to satisfy the clear probability standard for withholding of deportation. Acewicz, 984 F.2d at 1062; see Berroteran-Melendez v. INS, 955 F.2d 1251, 1255 (9th Cir.1992).
 
 II
 
 14
 For the foregoing reasons, we affirm the district court's denial of Wraich's habeas petition.
 
 
 15
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a), Ninth Circuit R. 34-4
 
 
 **
 The Honorable Marilyn L. Huff, United States District Judge for the Southern District of California, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit R. 36-3