107 F.3d 17
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Jose De Jesus SEQUEIRA-ARAUZ, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 95-70754.
 United States Court of Appeals, Ninth Circuit.
 Submitted Jan. 13, 1997.*
Decided Feb. 03, 1997.
 
 Before: LAY,** GOODWIN and SCHROEDER, Circuit Judges.
 
 
 1
 MEMORANDUM***
 
 
 2
 Jose De Jesus Sequeira-Arauz is a native and citizen of Nicaragua who entered the United States in 1992. An Immigration Judge (IJ) found him deportable and rejected his application for political asylum under 8 U.S.C. § 1158(a) and for withholding of deportation under 8 U.S.C. § 1253(h). Sequeira-Arauz appealed to the Board of Immigration Appeals (BIA), and the BIA dismissed the appeal. Sequeira-Arauz petitions this court to review the BIA's dismissal. We deny the petition.
 
 
 3
 We must decide whether the BIA properly denied asylum and withholding of deportation. A petitioner qualifies for asylum under § 1158(a) if he or she has a well-founded fear of persecution motivated by one of the grounds set forth in § 1101(a)(42)(A).[1] See Gomez-Saballos v. INS, 79 F.3d 912, 914 (9th Cir.1996); 8 U.S.C. §§ 1158(a) and 1101(a)(42)(A). If a petitioner shows past persecution, fear of future persecution is presumed and the burden shifts to the INS to rebut the presumption. See Surinder Singh v. Ilchert, 69 F.3d 375, 378 (9th Cir.1995) (per curiam). To qualify for withholding of deportation under § 1253(h) a petitioner must objectively demonstrate by a preponderance of evidence that he or she otherwise would be subject to persecution motivated by any one of those same factors. Gomez-Saballos, 79 F.3d at 914; 8 U.S.C. § 1253(h)(1).
 
 FACTS
 
 4
 In 1985 Sequeira-Arauz assisted a former Sandinista, Maximo Suarez-Perez, in smuggling Sandinista draftees and other men of military service age out of Nicaragua. After being reported in 1986, Sequeira-Arauz ceased smuggling and returned to school.
 
 
 5
 Sequeira-Arauz participated in Suarez-Perez's plan forcibly to enter the Honduran Embassy by taking a civilian hostage at gunpoint. Sequeira-Arauz remained at the embassy less than twenty days, returning home after learning his mother feared for his safety.
 
 
 6
 A month later, Nicaraguan police arrested Sequeira-Arauz. They interrogated him and isolated him in a small, poorly ventilated cell for fifty-three days. They questioned him regarding his smuggling and the break-in at the Honduran Embassy. They offered him freedom if he would cooperate and threatened to jail his father if he would not. He refused cooperation and asserts that he was placed in the general population in a political wing of the prison for a total incarceration period of fourteen months. There, another inmate tried to stab him. He opines that the inmate acted at the direction of the Sandinistas because he had reported the poor prison conditions to the Red Cross.
 
 
 7
 Sequeira-Arauz was charged with associating with Suarez-Perez to kidnap a civilian and to forcibly enter a foreign embassy.[2] He pled guilty and was sentenced to three to four years incarceration. Instead of returning to prison, he served his sentence under house arrest. He returned to school and was married. He failed to report to police each month as required, but asserts it was for fear of re-arrest regarding smuggling. However, police several times visited him at school without arresting him. He could not obtain employment at any government-run company--he believes because he was labeled "Contra"--and instead worked at his mother-in-law's market.
 
 
 8
 Four and a half years after authorities released him from prison, Sequeira-Arauz left Nicaragua and entered the United States. Since then, individuals visited his brother's house in Nicaragua and inquired of his whereabouts, but provided no reason for the inquiry. He asserts that the secret police had tried to confiscate his home, and that someone placed a sign on the house stating, "you are being watched," after his wife sold the house.
 
 BIA FINDINGS
 
 9
 The BIA held the facts in this case do not support a reasonable fear of persecution under § 1158(a). From this, the BIA held that Sequeira-Arauz also could not support his application for withholding of deportation under the higher standard of § 1253(h).
 
 
 10
 The BIA noted that although the Sandinistas knew where he worked, lived, and attended school, Sequeira-Arauz was not arrested, harmed or mistreated in any way in the four and a half years after his release from jail. The BIA concluded that the police visits plausibly were motivated by Sequeira-Arauz's failure to comply with his probation terms and determined that the record did not suggest any improper basis for the visits. The BIA discounted the 1994 visit to Sequeira-Arauz's brother's house in Nicaragua since the record did not establish that the visitors were Sandinistas or why they inquired into his whereabouts. The BIA also reasoned that because Sequeira-Arauz presented no evidence showing why the police were interested in confiscating his home, or who placed the sign on the property, these circumstances failed to support his alleged fear of persecution "on account of" his political views. See 8 U.S.C. §§ 1158(a) and 1101(a)(42)(A).
 
 
 11
 The BIA determined that Sequeira-Arauz failed even to raise the presumption of future persecution based on past politically-motivated persecution. It found that there was not sufficient evidence that his detention was anything but based on his admitted criminal conduct. It noted Sequeira-Arauz's failure to produce any support for his speculation that the prisoner who attempted to stab him worked for the Sandinistas.
 
 
 12
 Additionally, the BIA determined that even if he was housed with other political prisoners, Sequeira-Arauz failed to demonstrate that his incarceration was for his political views. The BIA concluded that the kidnapping, forcible entry into the embassy, and smuggling Nicaraguan draftees to Costa Rica were criminal offenses for which the government could detain Sequeira-Arauz. It also reasoned that if the Sandinista government wanted Sequeira-Arauz killed, it would not have released him on probation for the kidnapping offense and taken little interest in him while he remained in the country.
 
 
 13
 Finally, the BIA determined that even if the evidence supports the presumption of future persecution based on prior persecution, the lack of evidence that the Sandinistas have any present interest in persecuting Sequeira-Arauz rebuts the presumption. The BIA noted that in the three years since his departure, the Sandinistas have made no attempt to persecute his family.
 
 ANALYSIS
 
 14
 It is undisputed that legitimate government prosecution of criminal activity is not ordinarily persecution under § 1158(a). See Chanco v. INS, 82 F.3d 298, 301 (9th Cir.1996) (citing Abedini v. U.S. INS, 971 F.2d 188, 191 (9th Cir.1992)). However, this court distinguishes legitimate criminal investigations from extrajudicial punishments. See Harpinder Singh v. Ilchert, 63 F.3d 1501, 1508 (9th Cir.1995). Where any one of several motives for the alleged persecution is enumerated in § 1101(a)(42)(A), the statute is implicated. Id. at 1509. Sequeira-Arauz contends investigation into or punishment for smuggling draftees out of Nicaragua was politically motivated, even if smuggling is a crime, and therefore was persecution.
 
 
 15
 Criminal prosecution can constitute persecution when the underlying law being enforced is contrary to internationally accepted principles of human rights. Ramos-Vasquez v. INS, 57 F.3d 857, 863 (9th Cir.1995) (holding that Honduran soldier who deserted to avoid illegal military order to execute a friend may contend he faced persecution on account of political opinion). But the general principle that a government may require military service of its citizens and punish those who avoid compulsory service is well settled. Abedini, 971 F.2d at 191. ("[I]t is not persecution for a country to ... require military service of its citizens."); Rodriguez-Rivera v. INS, 848 F.2d 998, 1005 (9th Cir.1988) ("[R]equiring military service does not constitute persecution."). It follows that a government may also prosecute those who assist others in avoiding compulsory military service. Sequeira-Arauz acknowledges that he engaged in smuggling draftees out of Nicaragua. The BIA correctly found that the Sandinista government's incarceration and investigation for smuggling draftees was not persecution.
 
 
 16
 Unlike the situation in Blanco-Lopez v. INS, 858 F.2d 531, 534 (9th Cir.1988), where there was "no evidence in the record ... that an actual, legitimate, criminal prosecution was initiated against [the petitioner]," here Sequeira-Arauz was charged and convicted of a crime he admittedly perpetrated, though the official charge came well after his apprehension. Cf. Surinder Singh, 69 F.3d at 379 (finding persecution occurred where police tortured the petitioner because they thought he supported Sikh separatists and where the record lacked any evidence suggesting a legitimate investigation or criminal prosecution); Harpinder Singh, 63 F.3d at 1508-09 (finding petitioner was not the target of any legitimate government prosecution for terrorism where "terrorism" was so broadly defined that prosecution essentially supported a pattern of political suppression).
 
 
 17
 The BIA did not err as a matter of law in failing to determine that investigating the smuggling of draftees was not ipso facto persecution "on account of" political opinion. Given that we leave undisturbed the BIA's determination that past persecution did not occur, we do not reach the question of whether the presumption of future persecution based on past persecution has been rebutted.
 
 
 18
 Finally, Sequeira-Arauz maintains that the BIA erred by finding that he had no reasonable fear of persecution. He asserts that the Sandinista's "interest in him" should have ended after his parole term and after the Sandinistas left power. Because he was branded their "political enemy," argues Sequeira-Arauz, the Sandinistas would not "let him escape their attention altogether." This argument ignores that Sequeira-Arauz continually failed to report monthly to the police department as a required condition of his probation. Most of the four and a half years he remained in Nicaragua after his release fell within his probationary period, and the record provides no details of the conversations even suggesting the police visits were politically motivated. The BIA reasonably concluded the visits were "in connection with what amounts to his parole violation." Admin.R. at 4.
 
 
 19
 Even assuming Sequeira-Arauz is considered an "enemy" of the Sandinistas and that this label spawns their continued "interest" in him or their "attention" toward him, their past interest and attention alone do not support a reasonable fear of politically-motivated future persecution. We believe that under these facts the BIA reasonably determined that Sequeira-Arauz's fear of future persecution is not "well-founded."
 
 
 20
 In sum, the evidence would not compel a reasonable factfinder to conclude that Sequeira-Arauz has a reasonable fear of persecution. Because substantial evidence on the record as a whole supports the BIA's finding denying Sequeira-Arauz's application for asylum, a fortiori substantial evidence supports the BIA's determination that Sequeira-Arauz fails to meet the higher standard for withholding of deportation. We hold that the BIA did not abuse its discretion in denying Sequeira-Arauz's applications.
 
 
 21
 PETITION FOR REVIEW IS DENIED.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 Honorable Donald P. Lay, Senior Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The statutory grounds include persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A)
 
 
 [2]
 Sequeira-Arauz contends authorities instead wanted to charge him with smuggling men out of Nicaragua