Tomas Tabisula **BRIONES**, aka
Thomas Tabisula Briones,
Petitioner,

v.

**IMMIGRATION AND
NATURALIZATION SERVICE**,
Respondent.

No. 97–70321.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 22, 1998.

Filed April 30, 1999.

Bert M. Vega, San Francisco, California, for petitioner Tomas Tabisula Briones.

Donald E. Keener, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for respondent Immigration and Naturalization Service.

Before: HUG, Chief Judge, and BROWNING, SCHROEDER, PREGERSON, REINHARDT, O'SCANNLAIN, TROTT, KLEINFELD, HAWKINS, THOMAS, and SILVERMAN, Circuit Judges.

TROTT, Circuit Judge:

Tomas Briones, a professional artist from the Philippines, asks us to grant his petition for review of a decision by the Board of Immigration Appeals ("BIA") denying his request for political asylum and withholding of deportation under sections 208(a) and 243(h) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(a), 1253(h) (1982 & Supp.1998). He claims the evidence he presented to an Immigration Judge ("IJ") compels the conclusion that he has a well-founded fear of being persecuted in the Philippines by the New Peoples Army ("NPA") should he be required to return, and that he has carried his burden of demonstrating that he is a refugee within the meaning of INA § 101(a)(42)(A); 8 U.S.C. § 1101(a)(42)(A).

After reviewing the entire administrative record, we conclude that if one accepts at face value the gist of his testimony, Briones has indeed made a compelling case that he faces future persecution on account of his past activities as a government informer against the NPA. However, the IJ hearing his case made a specific finding that his story was "neither reliable nor credible." The Board hearing his appeal took note of this important credibility finding, which Briones appealed, but declined to address it, stating, "[W]e do not reach the question of credibility because we find that the facts as alleged by [Briones] do not demonstrate a well-founded fear of persecution." Because we disagree with the BIA on the compelling nature—if trustworthy—of Briones's facts, we remand this case to the Board for credibility findings as to his claim. *See Damaize–Job v. INS,* 787 F.2d 1332, 1338 (9th Cir.1986).

## I

If one believes ·Briones, he acted as a confidential informer for the armed forces of the government of the Philippines and against the insurgent Communist NPA on at least three occasions. He did so because he found repulsive the NPA's infliction of damage upon his village. The information he says he turned over to his cousin Lieutenant Rey Briones in the military allegedly led to two combat victories over the NPA, to the deaths of NPA operatives, and to the capture by the government of an important NPA leader, Commander Ligaya. Briones says the NPA can be proved to have discovered his role in their troubles because (1) he ended up on their death list, and (2) he received on his doorstep in Santo Domingo a package wrapped with a black ribbon and emblazoned with the political insignia of the Communists—a hammer and a sickle—which to Briones "meant only one—one thing. Death." He testified that his cousin showed him a military intelligence report listing the people the NPA planned to assassinate and told him that the NPA had uncovered his role as a government informer. Briones's name was seventh on the list. The package he received at his home may or may not have contained a note that said he would "be killed next." On this point, Briones's testimony is hazy. The information he learned from his cousin caused him to leave his hometown and eventually to seek asylum in the United States.

The BIA concluded that retaliation by the NPA against an informer working for the very government the NPA was seeking to overthrow is not persecution on account of a protected status. The BIA said,

> [Briones] does not claim that the NPA wants to harm him because of any political opinion he might hold, but because he cooperated with the military. We glean from the testimony that the NPA's interest is retaliation against a former informer, which would not be persecution on account of a protected status. It is reasonable to assume that any retaliation by the NPA would occur regardless of what political opinion, if any, the respondent held.

We respectfully disagree. Briones's active involvement in a fiercely ideological dis-

pute between the government of the Philippines and the Communist NPA leads us inexorably to the conclusion on these facts that the NPA surely attributed to him an adverse political point of view when they placed him on their assassination list and sent him a death threat. *See Sangha v. INS,* 103 F.3d 1482, 1489 (9th Cir.1997) ("The third way an applicant can establish a 'political opinion' under the Act is to show an imputed political opinion."). In our view, Briones's activity as a confidential informer who sided with the Phillipine military in a conflict that was political at its core certainly would be perceived as a political act by the group informed upon—which explains why Briones's name appeared on something as formal as the NPA's hit list. As we said in *Gomez–Saballos v. INS,* 79 F.3d 912, 917 (9th Cir.1996), "[D]espite the personal origins of a dispute, death threats by people on one side of a civil war against a person suspected of being on the other side constitute[s] persecution on account of political opinion." *See also Blanco–Lopez v. INS,* 858 F.2d 531, 533–34 (9th Cir.1988) ("We thus find it irrelevant that Blanco–Lopez's conflict with the Salvadoran government may have been instigated in the first instance through a personal dispute . . ., for it developed into a situation in which the security forces believed him to be a guerilla and attempted to persecute him for it."). The record here contains no other reason, plausible or otherwise, why the NPA would want to eliminate Briones other than his contribution to their defeat in the field, the deaths of their combatants, and the capture of one of their leaders. We seriously doubt that the NPA's motivation stemmed from a dislike of Briones's art works. Thus, what we said in *Gomez–Saballos* about participants in a civil conflict applies with equal force to this case.

We are fully aware of the BIA's conclusion that even if one were to assume a mixed motive on the part of the NPA, which included a cognizable political component, Briones's claim would nevertheless fall short. The Board said that Briones's "high profile professional life in Manila" and the fact that his fear of persecution was localized to his hometown undercut his claim of a well-founded fear of retribution. We reject this analysis for four reasons.

First, this analysis is fatally colored by the Board's erroneous view of the necessarily political nature of Briones's conduct, conduct which provoked an intention on the part of the NPA to kill him. The Board's error seems fundamental to its mistaken view of this case. Second, and if Briones is to be believed, the information he gave to the Philippine military not only thwarted tactical plans of the NPA, but resulted in the deaths of NPA operatives on at least two occasions plus the arrest of one of its commanders. This is not the usual case of attempted extortion. It is a case of threatened retaliatory death for causing death. A reasonable factfinder would be compelled by this scenario to conclude that Briones's fear is not only subjectively real, but certainly objectively well-founded. If the NPA will kill business people who do not contribute to their cause, it takes little imagination to understand what they would do to a successful informer for the Phillipine military. Third, any element of conjecture or speculation about the NPA's intention evaporates if one credits Briones's testimony (1) that his name was on a military intelligence report referencing the NPA's assassination list, and (2) that Lt. Briones told him that the NPA knew about his activities as a government informer. Fourth, given information in the State Department Country Report and evidence submitted by Briones, the NPA, although somewhat weaker than before, remains capable of killing its opponents.

## II

■ Nevertheless, we do not order the Board to grant relief. The record is susceptible of the conclusion that the IJ was correct when he said, "for all the reasons stated, the court has concluded that

Briones's application is neither reliable nor credible." However, because the credibility decision for which we remand this matter is not ours to make, we need not review in detail the alleged problems with Briones's testimony. Suffice it to note that his own attorney admitted in his appeal brief to the BIA that his client's testimony suffered from inconsistencies and that some of the details had become muddled during cross examination. *Compare Garcia–Ramos v. INS,* 775 F.2d 1370, 1371–72 (9th Cir.1985) (remanding to BIA for credibility findings).

■ The remedy under circumstances where the Board has expressly declined to rule on the issue is to remand to the Board for credibility findings. As we said in *Damaize–Job,* "It is our practice to remand to the Board for credibility findings whenever we reverse a Board decision in which the Board has expressly abstained from deciding the credibility issue." 787 F.2d at 1338 (citations omitted). *See also Canjura–Flores v. INS,* 784 F.2d 885, 889 (9th Cir.1986) ("We will continue to remand to the Board for credibility findings when we reverse a decision in which the Board has avoided the credibility issue...."); *Argueta v. INS,* 759 F.2d 1395, 1398 (9th Cir.1985) (concluding that Argueta's testimony if believed did establish eligibility for asylum and remanding for a credibility finding by the Board). This is not a case where the Board was silent on the credibility issue, or must have reached its decision on the assumption that the petitioner's testimony was truthful—in which case we, too, could assume the truthfulness of his testimony. *See Maldonado–Cruz v. INS,* 883 F.2d 788, 792 (9th Cir.1989).[1]

REMANDED for further proceedings.

O'SCANNLAIN, Circuit Judge, dissenting:

Of course the majority is correct in concluding that the discrepancies in Briones's testimony suggest that his story is incredible; the immigration judge so found. The problem is that the purported facts in the record, if taken to be true, do not *compel* the conclusion that Briones was persecuted on account of political opinion. Therefore, we need not reach the issue of credibility, remand is unnecessary and, for these reasons, I must respectfully dissent.

Let us recall the standards established by the Supreme Court in *INS v. Elias–Zacarias,* 502 U.S. 478, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). First, our review of BIA decisions is highly deferential; we may reverse only if the evidence "was *so compelling that no reasonable factfinder could fail to find the requisite fear of persecution.*" *Id.* at 483–484, 112 S.Ct. 812 (emphasis added). Second, to be statutorily eligible for asylum, Briones must demonstrate a well-founded fear of future persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). The words "on account of" require an inquiry into the *persecutor's* motives, and the political opinion we investigate is that of the *victim,* and not that of the persecutor. *Id.* at 482, 483, 112 S.Ct. 812. Recall further that "political *opinion* is ... a narrow term, encompassing beliefs but not activities." *Canas–Segovia v. INS,* 970 F.2d 599, 601 (9th Cir.1992) (emphasis in original).

Briones sought asylum because of threats made against him by the NPA due to his service as a confidential informant for the Philippine government. As Briones stated in his opening brief, the NPA "is out to kill him because of his

1. Although the Board is certainly free to determine its own method of processing these claims, we suggested in *Canjura–Flores* that it might want to consider addressing rather than bypassing credibility problems. 784 F.2d at 889, n. 1. Conclusions stated in the alternative would normally relieve both us and the Board of the delay and extra work caused when a remand is required. We take this opportunity respectfully to reiterate this modest suggestion.

works as confidential agent of the military." Even the majority states that Briones's story indicates "he faces future persecution on account of his past activities as a government informer." Briones and the majority are correct to that extent; substantial evidence certainly supports the BIA's determination that the persecutors' interest was retaliation against a perceived informer. But it fails to establish that the NPA was motivated to persecute Briones on account of Briones's *political opinion.* Rather it demonstrates retaliation and self-protection by the NPA and, in my view, "it is reasonable to assume that the retaliation would occur regardless of what political opinion, if any, the respondent held." *Adhiyappa v. INS,* 58 F.3d 261, 265 (6th Cir.1995) (quoting the BIA decision).

Indeed, in a similar case, the Sixth Circuit held that the BIA's "determination that Petitioner's persecution was not on account of his political opinion" was supported by substantial evidence. *Id.* at 268. Adhiyappa, an Indian Tamil working at a Sri Lankan university, acted as a government informant by passing on information about student activists who supported the Tamil separatist cause. When the Tamil separatists threatened Adhiyappa, Adhiyappa fled to the United States and claimed asylum based on political opinion. In affirming the denial of Adhiyappa's asylum petition, the court explained that "the evidence would support a conclusion ... that it was his status as an informant, not his political opinion, that spurred their hatred." *Id.* The court noted that 8 U.S.C. § 1101(a)(42)(A) "provides protection for individuals who are persecuted on account of their political opinion, but it does not include all individuals who are persecuted because their actions tend to obstruct the activities of politically-motivated organizations, even where those activities may be in part motivated by political opinion." *Id.*

The attack on Briones can easily be analogized to the attack on Elias–Zacarias. In *Elias–Zacarias,* the Court held that a

guerilla organization's attempt to conscript a Guatemalan native into its military forces did not necessarily constitute "persecution on account of political opinion." *Elias–Zacarias,* 502 U.S. at 481–482, 112 S.Ct. 812. Rejecting the argument that a political opinion should be imputed per se in such situations, the Court noted: "Even a person who supports a guerilla movement might resist recruitment for a variety of reasons—fear of combat, a desire to remain with one's family and friends, a desire to earn a better living in civilian life, to mention only a few." *Id.* at 482, 112 S.Ct. 812. Confronting Elias–Zacarias's argument that the persecutor's motives in forcibly recruiting members were necessarily political, the Court stated first, that the emphasis must be on the *"victim's* political opinion, not the persecutor's," and second, that "the mere existence of a generalized 'political' motive underlying the guerillas' forced recruitment is inadequate to establish ... the proposition that Elias–Zacarias fears persecution *on account of* political opinion, as § 101(a)(42) requires." *Id.* (emphasis in original).

Likewise in *Adhiyappa,* as in Briones's case, it is doubtful that the petitioners' political opinions played any role at all. "One might undertake to inform government officials of the names of members of a militant separatist group for reasons other than political opinion." *Adhiyappa,* 58 F.3d at 267. In fact, as in *Elias–Zacarias,* Briones's testimony actually demonstrates that he was not motivated by political opinion. Briones testified that he agreed to serve as an informant because of concerns about the damage the NPA had caused to his hometown. Briones was motivated to protect his home town from the destruction caused by the NPA; there is no evidence he was motivated by a disagreement with the NPA's communist mission. *Cf. Elias–Zacarias,* 502 U.S. at 482, 112 S.Ct. 812 (Elias–Zacarias "testified that he refused to join the guerillas because he was afraid that the government would retaliate against him and his family if he did so.").

Even if we were to consider Briones's actions as politically motivated, he "still has to establish that the record ... compels the conclusion that he has a 'well-founded fear' that the guerillas will persecute him *because of* that political opinion, rather than because of his" acts as a government informer. *Id.* at 483, 112 S.Ct. 812 (emphasis in original). Briones did not present any evidence suggesting that the guerillas erroneously believed that his informant service was politically based. *See id.* at 482, 112 S.Ct. 812. Moreover, even though the NPA was certainly forwarding its own political agenda by attempting to rid itself of a spy, this appears to be "the mere existence of a generalized 'political' motive" and "is inadequate to establish ... the proposition that [Briones] fears persecution *on account of* political opinion, as § 101(a)(42) requires." *Id.* (emphasis in original).

The majority interestingly ignores the BIA's finding that Briones failed to present evidence that the Philippine government would be either unable or unwilling to protect him or that he ever sought such protection. This court has held that persecution may be "inflicted either by the government or by persons or organizations which the government is unable or unwilling to control." *Sangha v. INS,* 103 F.3d 1482, 1487 (9th Cir.1997). *See also Korablina v. INS,* 158 F.3d 1038, 1044 (9th Cir.1998) ("Persecution may be found by cumulative, specific instances of violence and harassment toward an individual ... not only by the government, but also by a group the government declines to control."); *Singh v. INS,* 134 F.3d 962, 967 n. 9 (9th Cir.1998) ("[P]rivate individuals that the government is unable or unwilling to control can persecute someone."). Because the NPA is not the government, Briones had the burden of showing that the Philippine government was "unable or unwilling" to control the NPA. As the BIA correctly found, Briones failed to present evidence to this effect.

The record in this case does not compel a conclusion that the findings of the BIA were wrong. The record presents no evidence to suggest that the NPA threatened Briones's life because he held political opinions antithetical to its own. Rather, the evidence shows that the NPA was attempting to shut off an information source that was exceedingly damaging to its operations and to retaliate against a man who had wreaked so much havoc to its plans. Indeed, even the majority acknowledges that "[i]t is a case of threatened retaliatory death for causing death." On these facts, I simply cannot say that "no reasonable factfinder could fail to find" that the persecution was on account of Briones's political opinions.

I would deny the petition for review and affirm the decision of the BIA in this case.