**Rene BLANCO–LOPEZ, Petitioner,**

v.

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

No. 87–7060.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 13, 1988.

Decided Sept. 29, 1988.

---

Christopher J. Brelje, Lewis and Roca, Phoenix, Ariz., for petitioner.

Alison R. Drucker, U.S. Dept. of Justice, Office of Immigration Litigation, Civ. Div., Washington, D.C., for respondent.

Before BROWNING, HUG and TROTT, Circuit Judges.

HUG, Circuit Judge:

Rene Blanco–Lopez petitions for review of the Board of Immigration Appeal's ("BIA") decision denying his application for asylum and withholding of deportation. We have jurisdiction pursuant to section 106(a) of the Immigration and Nationality Act ("Act"), 8 U.S.C. § 1105a(a). *See Foti v. INS*, 375 U.S. 217, 84 S.Ct. 306, 11 L.Ed. 2d 281 (1963). We reverse.

## FACTS

Petitioner, a 36–year old male, is a native and citizen of El Salvador. On September 16, 1983, the Immigration and Naturalization Service ("INS") issued an order to show cause against the petitioner, charging that he entered the United States on September 15, 1983 without inspection, in violation of section 241(a)(2) of the Act, 8 U.S.C. § 1251(a)(2).

At his hearing on February 23, 1984, petitioner conceded deportability but requested asylum and withholding of deportation. His application for relief and his testimony indicated the basis upon which he sought such relief. Blanco–Lopez had experience in the Salvadoran army and police forces. During his employment with the Treasury Police he criticized the brutality of the authorities in conversations with co-workers and friends. Petitioner testified that it was quite dangerous to take a stand critical of the Salvadoran government, and that he was forced to quit his job with the police because of problems caused by his expression of disapproval to co-workers.

Blanco–Lopez then became a fisherman. In this trade he encountered another fisherman, Roberto Gallos, who had connections with both the guerrillas and security forces. Gallos took a dislike to Blanco–Lopez when, on one occasion, Gallos hit his own employee with a stone and Blanco–Lopez objected.

Out of his dislike for Blanco–Lopez, Gallos falsely informed the police that Blanco–Lopez and six others were guerrillas and were using fishing boats to import arms from Nicaragua. As a result of this accusation Blanco–Lopez and three others were apprehended one night by the police, blindfolded and tied up, and held for three days. According to petitioner, the police threatened to kill the captives at night if they did not admit to being guerrillas. One person in the group was taken out and beaten. Shortly after, Blanco–Lopez's brother—an officer in the army—arrived and was able to convince the authorities to release Blanco–Lopez and his companions.

Fifteen days later, Gallos came to Blanco–Lopez's house with a knife, and attacked Blanco–Lopez. In the scuffle, Gallos wounded himself slightly with his own knife. Later Gallos contacted the National Guard, falsely reporting that Blanco–Lopez had robbed him and had tried to kill him. The authorities swarmed the area in search of Blanco–Lopez, but he had fled to his father's house. There he contacted his brother, who advised him to flee the country because he was unsure whether he could save Blanco–Lopez a second time. Just minutes after Blanco–Lopez left his father's house the authorities arrived at the house, searching it for any evidence of Blanco–Lopez. The authorities told Blanco–Lopez's parents that they would kill him if they found him because he was reported to be a guerrilla. Blanco–Lopez retreated

to nearby mountains, where he hid in the brush for two weeks to avoid being captured. During this time his family left food for him in the animal corrals. Blanco–Lopez then departed for the United States [1] and entered illegally.

At his hearing, petitioner recounted these events and testified that he was afraid of being killed by the Salvadoran security forces were he to return to his country. He also testified that the Salvadoran police knew his name and had records of his activities, and that his brother would no longer help him out of conflicts with the Salvadoran authorities. Additionally, Blanco–Lopez offered background material on El Salvador, documenting the killing, torture, and gross human rights violations which occur in that country.

The immigration judge denied asylum and withholding of deportation. The BIA affirmed on January 14, 1987, though it found Blanco–Lopez's testimony credible.

## DISCUSSION

■ We first address the claim for withholding of deportation, since it is assessed under a more stringent standard than the one applicable to a claim for asylum. *See Arteaga v. INS*, 836 F.2d 1227, 1228–29 (9th Cir.1988) (discussing *INS v. Cardoza–Fonseca*, 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987)). Blanco–Lopez is "entitled to mandatory withholding of deportation if his 'life or freedom would be threatened in [El Salvador] on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Arteaga*, 836 F.2d at 1228 (quoting 8 U.S.C. § 1253(h)(1)). The "clear probability of persecution" standard is applicable to withholding of deportation claims. *Id.* The proper inquiry under this standard is "whether it is more likely than not that the alien [will] be subject to persecution." *INS v. Stevic*, 467 U.S. 407, 424, 104 S.Ct. 2489, 2498, 81 L.Ed.2d 321 (1984). Petitioner is not required to provide independent corroborative evidence of persecution. Rather, his own testimony, if credible, may establish a clear probability of persecution. *Ar-*

*tiga Turcios v. INS*, 829 F.2d 720, 723 (9th Cir.1987) (as amended); *Bolanos–Hernandez v. INS*, 767 F.2d 1277, 1285 (9th Cir. 1985) (as amended). We must determine whether the Board's factual determinations justifying the denial of withholding of deportation are supported by substantial evidence. *Florez-de Solis v. INS*, 796 F.2d 330, 333 (9th Cir.1986); *McMullen v. INS*, 658 F.2d 1312, 1316 (9th Cir.1981).

■ Blanco–Lopez must demonstrate a clear probability of persecution based on one of the five statutory grounds listed in 8 U.S.C. § 1253(h)(1). Blanco–Lopez predicates his claim on persecution "on account of ... political opinion." *Id.* The BIA refused to grant relief under section 1253(h) because it concluded that Blanco–Lopez had not established that he was at risk for persecution based on "political opinion." Rather, it noted that the false charges of gun running arose out of a dispute between petitioner and Gallos which was "personal" rather than political in nature. It also held that the government of El Salvador has the right to investigate complaints of criminal activity—in this case, gun running—and that criminal prosecution does not amount to political persecution. The government makes those same arguments on appeal.

We are not persuaded by the BIA's rationale for denying relief. Though it may be true that the false charges against Blanco–Lopez arose out of a personal dispute between himself and Gallos, it is evident from the record that the Salvadoran security forces believed he was affiliated with the guerrillas. During the three days he was held captive, the police threatened to kill him if he did not admit to being a guerrilla. It is quite likely that petitioner's earlier criticism of the Salvadoran government during his employment with the security forces fueled their belief that he was a guerrilla. We thus find it irrelevant that Blanco–Lopez's conflict with the Salvadoran government may have been instigated in the first instance through a personal dispute with Gallos, for it developed into a

---

**1.** He was able to obtain a passport to leave El  Salvador.

situation in which the security forces believed him to be a guerrilla and attempted to persecute him for it.

The Government also argues that the Salvadoran police apprehended Blanco–Lopez in order to investigate criminal charges of gun running leveled against him. In this regard, the Government asserts that El Salvador has the right to prosecute individuals accused of criminal activity and that such prosecution is readily distinguishable from persecution based on political beliefs—the statutory basis for withholding of deportation. We find no evidence in the record, however, that an actual, legitimate, criminal prosecution was initiated against Blanco–Lopez while he was in El Salvador. Indeed, Blanco–Lopez testified that, while a captive of the security forces, he was threatened with death unless he admitted to being a guerrilla. We can hardly characterize this as an example of legitimate criminal prosecution. Blanco–Lopez also testified that, had the security forces found him a second time, they would have killed him without undertaking any formal prosecutorial measures. We conclude that the incident described by Blanco–Lopez was not in furtherance of a criminal prosecution, but rather was one of governmental *persecution* based on Blanco–Lopez's perceived political beliefs.

Moreover, there is no indication that the Government would not resume its persecution of Blanco–Lopez were he to return to El Salvador. The record indicates that petitioner was released by the security forces only due to the intercession of his brother, who later stated his refusal to continue protecting Blanco–Lopez. The BIA admitted in its second opinion in this case that there was no evidence that Blanco–Lopez was acquitted of the false charges against him. Indeed, the national guardsmen searched for him a second time, telling his family they would kill Blanco–Lopez if they found him. Blanco–Lopez also testified that the Salvadoran authorities knew his true name, had records of his arrest, and would find him even if he relocated in an area of El Salvador where he previously had not been.

We conclude that Blanco–Lopez has established a clear probability of persecution based on political opinion and therefore may not be deported. *See Bolanos–Hernandez*, 767 F.2d at 1288. As such, he has necessarily met the less stringent standard for asylum eligibility, namely, that his fear of persecution is well-founded. *See Artiga Turcios*, 829 F.2d at 724.[2] Having so found, we need not address Blanco–Lopez's other contentions on appeal.

We reverse the BIA's decision denying withholding of deportation and asylum, and remand to the Attorney General to exercise his discretion as to the asylum claim.

REVERSED AND REMANDED.

---

**2.** Blanco–Lopez may wish to be granted asylum in addition to withholding of deportation because a grant of asylum carries certain benefits

that are not part of withholding of deportation relief. *See Artiga–Turcios,* 829 F.2d at 724.