Juan A. MALDONADO–CRUZ, a/k/a Hugo Deras–Espinoza, Petitioner,

v.

U.S. DEPARTMENT OF IMMIGRATION AND NATURALIZATION, Respondent.

No. 88–7036.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 14, 1989.

Decided Aug. 24, 1989.

Steven M. Rosenthal, Wilmer, Cutler & Pickering, Washington, D.C., for petitioner.

Marshall Golding, Washington, D.C., for respondent.

Before WALLACE, TANG and SCHROEDER, Circuit Judges.

TANG, Circuit Judge:

Juan A. Maldonado–Cruz ("Maldonado") petitions for review a decision of the Board of Immigration Appeals ("BIA") affirming the denial of political asylum and withholding of deportation. Because the decision of the BIA was incorrect as a matter of law, we reverse.

## I. Factual Background

Maldonado had been employed as an agricultural worker near his hometown of La Reyna which is located in northern El Salvador. One day in the fall of 1983, while Maldonado was working in the fields, a guerrilla group consisting of approximately twenty-five men apprehended Maldonado and forced him to go to the guerrilla camp. At the camp, Maldonado was subjected to two days of political indoctrination. The guerrillas then forced Maldonado to accompany them to La Reyna on a raid for food and supplies. Maldonado was forced to stand guard over stolen supplies.[1]

On the following evening, Maldonado escaped from the guerrilla camp, reaching his home at about 3:00 a.m. He stayed at home for only three hours. Fearing pursuit by the guerrillas, he went to the capital, San Salvador, where he met some neighbors who told him that the guerrillas had been looking for him. Maldonado immediately decided to leave the country and headed for Guatemala. Following his departure from El Salvador, Maldonado heard from his mother that the guerrillas had returned to his home several times looking for him. Their visits stopped only after they were shown a letter from Maldonado postmarked from abroad.

Maldonado worked at various temporary jobs in Guatemala and Mexico as he journeyed northward. In 1985, Maldonado entered the United States and settled in the Reno, Nevada area where he had relatives. On July 20, 1986, Maldonado was arrested

---

1. Although there apparently exist some discrepancies in the record, according to Maldonado, a friend of his was also apprehended by the guerrillas. The friend was taken with Maldonado to the guerrilla camp and was similarly subjected to political indoctrination. According to Maldo- nado, the friend escaped during the night of the second day at the camp. During the raid in La Reyna, Maldonado says that he heard shots in the distance and soon learned that the guerrillas had executed his friend.

by local police in Reno for illegally carrying a concealed weapon.[2]

## II. Procedural Background

In September 1986, as a result of the arrest by Reno police, the Immigration and Naturalization Service ("I.N.S.") apprehended Maldonado in Reno. The I.N.S. issued an Order to Show Cause on September 19, 1986, charging him with an uninspected entry to the United States. The I.N.S. then transferred Maldonado to the Federal Detention Center in Oakdale, Louisiana.

On October 21, 1986, Maldonado appeared before an Immigration Judge ("IJ") in Oakdale and conceded deportability. Maldonado requested political asylum[3] and withholding of deportation,[4] and in the alternative, the privilege of voluntary departure.[5] The basis of his requests was fear of political persecution from either the guerrillas or the El Salvador military based on "political opinion" within the meaning of 8 U.S.C. § 1101(a)(42)(A). Maldonado claims political neutrality and fears that if he were to return to El Salvador, he would be killed either by the guerrillas or by the military. On January 14, 1987, after a hearing, the IJ denied these requests in an oral decision. AR 118.

After the I.N.S. transferred Maldonado to a detention facility in El Paso, Texas, Maldonado appealed the IJ's decision to the BIA. *See* 8 U.S.C. § 1226(b); 8 C.F.R. §§ 3.1–3.8. The BIA dismissed the appeal. *Matter of Maldonado–Cruz*, Interim Decision 3041 (BIA 1988).

On January 28, 1988, Maldonado filed a timely petition for review. We have jurisdiction under 8 U.S.C. § 1105a(a). On March 1, 1988, Maldonado was released on bond and now resides in California.

## III. Circuit Case Law

We first decide which circuit cases we apply because Maldonado resides within the Ninth Circuit while the BIA proceedings took place within the Fifth Circuit. With respect to venue, there is no question that this case is properly before us. The venue of petitions for review of deportation orders is either in the circuit where the administrative proceedings were conducted on the residence of the petitioner. 8 U.S.C. § 1105a(a)(2). The question of which Circuit's cases to apply, however, is less clear-cut.

The Attorney General has the authority to transport aliens out of the circuit in which they were apprehended. 8 U.S.C. § 1252(c). In *Rios–Berrios v. I.N.S.*, 776 F.2d 859, 863 (9th Cir.1985), an alien was arrested within the Ninth Circuit and was charged with illegally entering the United States. The alien was then transported, under the authority of § 1252(c), to a detention center in Florida. Hearings were conducted in Florida before an IJ and the BIA. On review, we applied Ninth Circuit cases.

---

2. On August 5, 1986, Maldonado entered a plea of guilty and was sentenced to sixteen days in jail.

3. "The Attorney General shall establish a procedure for an alien physically present in the United States, ... irrespective of such alien's status, to apply for asylum, and the alien may be granted asylum in the discretion of the Attorney General if the Attorney General determines that such alien is a refugee within the meaning of section 1101(a)(42)(A) of this title." 8 U.S.C. § 1158(a). "The term 'refugee' means any person who is outside any country of such person's nationality ... who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or *a* well-founded fear of persecution on account of race, religion, nationality, *membership in a particular social group, or political opinion....*" 8 U.S.C. § 1101(a)(42)(A) (emphasis added). Specific procedures for applying for asylum are set forth in 8 C.F.R. § 208.

4. "The Attorney General shall not deport or return any alien ... to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, *membership in a particular social group,* or *political opinion.*" 8 U.S.C. § 1253(h)(1) (emphasis added).

5. "If any alien, ... is able to depart from the United States under the order of deportation, except that he is financially unable to pay his passage, the Attorney General may in his discretion permit such alien to depart voluntarily...." 8 U.S.C. § 1252(g). Application procedures are set forth in 8 C.F.R. § 244.1.

■ In addition to the general policy of preventing forum shopping by the INS, the facts of this case make it particularly appropriate to apply Ninth Circuit cases. Maldonado was apprehended in the Ninth Circuit, was residing in the Ninth Circuit at that time, and has resided in the Ninth Circuit since his release from custody. Apart from the government's unilateral action in transporting him to Louisiana and Texas for deportation proceedings, Maldonado had no contacts with the Fifth Circuit. We conclude that the cases of the Ninth Circuit shall apply to this appeal.

### IV. Political Persecution

In dismissing Maldonado's appeal, the BIA noted that a well-founded fear of harm that is *not* based on race, religion, nationality, membership in a particular social, or political opinion, cannot be the basis for granting asylum or withholding of deportation. *See Martinez–Romero v. I.N.S.*, 692 F.2d 595 (9th Cir.1982) (reported anarchy is insufficient basis to disturb deportation order); *Raass v. I.N.S.*, 692 F.2d 596 (9th Cir.1982) (generalized economic disadvantage cannot be basis for award of asylum). We have previously noted that

> [a] clear probability that an alien's life or freedom is threatened, without any indication of the basis for the threat, is generally insufficient to constitute "persecution" and thus to preclude the Attorney General from deporting the alien. There must also be some evidence that the threat is related to one of the factors enumerated in [the statute].

*Hernandez–Ortiz v. I.N.S.*, 777 F.2d 509, 516 (9th Cir.1985).

■ The BIA dismissed Maldonado's appeal on the grounds that his fear of persecution by the guerrillas and by the El Salvador military is *not* persecution on account of political opinion as a matter of law. Indeed, the BIA conceded that "the issue does not involve questions of proof, but whether the harm the respondent fears

is on account of 'political opinion' as this term is used under [8 U.S.C. § 1101(a)(42)(A)]." *Matter of Maldonado–Cruz*, at 3. Because resolution of this matter involves a question of law, we review the decision of the BIA de novo. *Rodriguez–Rivera v. I.N.S.*, 848 F.2d 998, 1001 (9th Cir.1988); *see also Lazo–Majano v. I.N.S.*, 813 F.2d 1432, 1434 (9th Cir.1987).

This case presents the following legal question: If an alien is forced to join a band of guerrillas, but escapes, and the alien then fears persecution by the guerrillas and by the foreign government's military, is the fear of persecution on account of "political opinion" within the meaning of 8 U.S.C. § 1101(a)(42)(A)? The BIA answered this question in the negative. We disagree and reverse.

It is true that Maldonado had not aligned himself politically with either the guerrillas or the military. But we have already noted that "[c]hoosing to remain neutral is no less a political decision than is choosing to affiliate with a particular political faction." *Bolanos–Hernandez v. I.N.S.*, 767 F.2d 1277, 1286 (9th Cir.1984); *see also Turcios v. I.N.S.*, 821 F.2d 1396, 1401 (9th Cir.1987).

■ We hold that Maldonado's fear of persecution by the guerrillas was based on political opinion. The guerrillas are a political entity. Maldonado's refusal to join them was a manifestation of his neutrality, which is a recognized political opinion. *Del Valle v. I.N.S.*, 776 F.2d 1407, 1413 (9th Cir.1985); *Bolanos–Hernandez*, 767 F.2d at 1286. Hence, any persecution by the guerrillas is a result of Maldonado's expression of his political opinion, which falls within the meaning of 8 U.S.C. § 1101(a)(42)(A).[6]

This is not a case involving mere claims of "random violence." *Rodriguez–Rivera*, 848 F.2d at 1006. Maldonado "is likely to be persecuted by a politically motivated group that frequently engages in terrorist tactics directed at those who refuse to join

---

**6.** Because we reverse on this ground, we do not reach the question of whether Maldonado would be entitled to relief on the grounds of "persecution on account of membership in a particular social group" or whether the issue was properly preserved because it was raised for the first time on appeal.

its armed political struggle." *Bolanos–Hernandez,* 767 F.2d at 1287.

Maldonado's fear of persecution by the El Salvador military is similarly on account of political opinion. In *Blanco–Lopez v. I.N.S.,* 858 F.2d 531, 532 (9th Cir. 1988), the petitioner had been falsely accused of being associated with the guerrillas. The El Salvador authorities then threatened to kill the petitioner because of his reportedly being a guerrilla. The BIA affirmed the denial of asylum and withholding of deportation as a matter of law. *Id.* at 533. We reversed, holding that the petitioner was being persecuted based on political opinion in that the government "security forces believed him to be a guerrilla and attempted to persecute him for it." *Id.* at 534. Similarly, in the instant case, Maldonado's fear of persecution is based on political opinion; Maldonado fears harm from the El Salvador authorities because of his supposed association with the guerrillas.

Furthermore, we noted in *Blanco–Lopez* that

> the incident described by Blanco–Lopez was not in furtherance of a criminal prosecution, but rather was one of governmental *persecution* based on Blanco–Lopez's perceived political beliefs.

858 F.2d at 534 (emphasis in original). Maldonado's fate at the hands of the El Salvador military would also be persecution rather than legitimate criminal prosecution.

The BIA did not question the petitioner's credibility. The undisputed evidence in the record reflects that the petitioner was kidnapped by guerrillas, that after his escape the guerrillas returned repeatedly to his home looking for him, and that they ceased only when shown evidence that he had left the country. The petitioner believed the guerrillas had executed his friend for having escaped them.

The BIA based its decision solely on the legal issues considered above.[7] The BIA's refusal to consider credibility leads to the presumption that it found the petitioner credible. Certainly, "[w]hen the Board's decision is silent on the question of credibility, and the Board has fully explained the rationale behind its decision, we will presume that the Board found the petition credible, and to proceed to review the Board's decision." *Damaize–Job v. INS,* 787 F.2d 1332, 1338 (9th Cir.1986); *see also Artiga Turcios,* 829 F.2d at 723 (since BIA did not make findings of credibility, we presumed that the petitioner's testimony was credible.)[8]

The record here demonstrates a clear probability of persecution. In *Canjura–Flores v. INS,* 784 F.2d 885, 887 (9th Cir.1985), we held the requisite standard

7. Although the IJ expressed some concern about Maldonado's credibility, there is no clear indication that the IJ disbelieved the basic facts upon which we make our legal determination now. Indeed, it appears that the IJ generally believed the petitioner's story, but simply ruled that the facts do not warrant the relief requested. In his oral decision, the IJ stated that "I do not find the respondent credible on many of the items that he's brought up," *Decision* at 6, but the factual points about which the IJ had some concern dealt with either tangential matters or matters pertaining to his eventual arrest in Nevada. For example, immediately following the above-quoted assertion, the IJ stated that "I do not find it credible that when he was apprehended by the police in Nevada while he was carrying a knife that he didn't know that he was not supposed to carry a knife inside the place where he was apprehended." *Id.*

The IJ concluded that "the respondent has failed to establish that he would be persecuted or that he has a well-founded fear of persecu-

tion or that his life or freedom would be threatened upon his return to El Salvador within the contemplation of Section 208(a) and/or Section 243(h) of the Act." *Id.* at 6–7. This, then, is not a case where the IJ found that the petitioner was completely fabricating a story about kidnapping in order to escape deportation. Rather, while there were some minor discrepancies in Maldonado's account of the facts, the IJ accepted the fact that Maldonado was kidnapped by guerrillas, but ruled that his fears were too generalized or vague *as a matter of law.* Thus, the implications of the dissent notwithstanding, because the basic facts are not in dispute, it would be inappropriate for us to remand this matter for further factual determinations.

8. We disagree with the assertion of the dissent that the BIA "avoided the issue of credibility." [*Dissent* at 794.] Rather, we believe that the BIA was *silent* on the issue and implicitly accepted the IJ's findings of fact. Certainly, there is no indication that the BIA expressly "avoided" the credibility issue.

was met where the petitioner believed that the El Salvadoran National Guard was looking for him because of his previous leftist leanings and activities, his belief being based on information from his family that after he had left El Salvador the National Guard had come to his home and asked for him. We reached a similar conclusion in *Artiga Turcios*, 829 F.2d at 724, where the petitioner himself saw from a distance several guerrillas who were looking for him, presumably because of his previous special combat training with the Salvadoran army. The instant case is even stronger than these, since Maldonado was actually inducted into the guerrilla force against his will, and had heard from his family that the guerrillas have actively and persistently sought him out at his home.[9]

Having demonstrated a clear probability of persecution due to his political opinion of neutrality, Maldonado is entitled to withholding of deportation. 8 U.S.C. § 1253(h). And "[u]nlike asylum, withholding of deportation is not discretionary; if the alien meets the statutory test, the Attorney General cannot deport the alien." *Vilorio-Lopez v. I.N.S.*, 852 F.2d 1137, 1140 (9th Cir. 1988).

In meeting the standard for withholding of deportation by establishing a clear probability of persecution, petitioner has also met the standard for granting of asylum by demonstrating a well-founded fear of persecution. *See Artiga Turcios*, 829 F.2d at 724. As only a grant of asylum automatically permits an alien to apply for permanent residence status after one year, 8 U.S.C. § 1159(b), petitioner may wish to be granted asylum as well as withholding of deportation. We therefore remand petitioner's asylum claim to the Attorney General for consideration. *See Artiga Turcios*, 829 F.2d at 724; 8 U.S.C. § 1158(a).

We grant the petition for review, reverse the denial of withholding of deportation, and remand the case. The Attorney General is prohibited from deporting petitioner pursuant to 8 U.S.C. § 1253(h). The BIA shall exercise its discretion regarding petitioner's asylum claim pursuant to 8 U.S.C.

§ 1158(a). PETITION GRANTED; REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

WALLACE, Circuit Judge, concurring and dissenting:

I concur in the opinion of the majority except that portion of part IV where the majority makes factual determinations regarding Maldonado's credibility—determinations inconsistent with the record, law, and logic. According to the majority, because the Board of Immigration Appeals (Board) based its decision on legal issues and thus did not consider Maldonado's credibility, we must presume his story credible. Maj. op. at 792. From this portion of the majority opinion, I dissent.

We have already assigned credibility determinations to the fact finder—and well we should. *Medsker v. Bonebrake*, 108 U.S. 66, 72–73, 2 S.Ct. 351, 354, 27 L.Ed. 654 (1883) (*Medsker*); *Canjura–Flores v. INS*, 784 F.2d 885, 888 (9th Cir.1985) (*Canjura–Flores*). We cannot determine from the record if an individual is telling the truth. A believable story in print may be unbelievable when witnessed in person. *Medsker*, 108 U.S. at 72, 2 S.Ct. at 354 ("The master, who was present and heard Mrs. Medsker testify, and could see her manner ... is therefore better able to determine the weight due to her testimony....."); *Canjura–Flores*, 784 F.2d at 888 ("The Immigration Judge is in the best position to make credibility findings because he views the witness as the testimony is given."). Therefore, when the immigration judge (IJ) makes credibility findings, we defer to those findings. *Vilorio–Lopez v. INS*, 852 F.2d 1137, 1141 (9th Cir.1988) (*Vilorio–Lopez*); *Canjura–Flores*, 784 F.2d at 888. In addition, the Board is experienced enough and close enough to the initial process that we defer to its findings. *See Cardoza–Fonseca v. INS*, 767 F.2d 1448, 1455 (9th Cir.1985).

Despite our usual dependency on the fact finder for credibility determinations, the

---

**9.** Maldonado also has fears resulting from the  fate of his friend. *See* footnote 1, *supra*.

majority decides to short-circuit this necessary step and arrogate this responsibility to itself. Why? As the majority sees it, the government waives this determination because the IJ and Board were silent. In its own words, the Board's "refusal to consider credibility leads to the presumption that it found the petitioner credible." Maj. op. at 792. This defies logic. The Board did not "refus[e] to consider credibility." Both the IJ and Board did not need to make credibility determinations because their decisions rested on purely legal issues. The majority robs the government of the fact finder's credibility determination because the IJ and Board neglected to make findings wholly unnecessary to their decisions. We would never hold such with a district court decision. For example, we do not require a district court, when it rules as a matter of law, to make needless alternative findings of fact—as the majority now requires of the Board. Nor do we award relief when we reverse a district court's dismissal for failure to state a claim upon which relief can be granted; rather we remand. Here the Board in essence ruled that Maldonado failed to state a claim. The obvious result should be a remand to make factual findings, including credibility determinations, under the law as pronounced.

The authority on which the majority relies does not command its departure from reason. In *Damaize–Job v. INS*, 787 F.2d 1332 (9th Cir.1985) (*Damaize–Job*), the IJ explicitly found the petitioner not to be credible. Our court, however, rejected the IJ's credibility determination. *Id.* at 1337–38. We then observed that the Board was silent on the issue of credibility, and explained that "[w]hile it is conceivable that the BIA shared the IJ's concerns regarding Damaize's credibility, any reliance on the IJ's stated reasons would be inappropriate and unsupported by substantial evidence." *Id.* at 1338 n. 6. That is not our case. Neither the IJ nor the Board made credibility determinations which we rejected. Indeed, they did not need to do so because they were deciding the case on legal issues. In *Damaize–Job*, flawed credibility findings formed the basis of the IJ and, the

opinion suggests, the Board's decisions; in our case, credibility findings formed no basis in the IJ and Board's decisions. The IJ and Board in *Damaize–Job* did not ground their decisions on issues of law. *Damaize–Job* is therefore distinguishable.

The part of *Damaize–Job* on which the majority relies cites *Canjura–Flores*, 784 F.2d at 889. *Damaize–Job*, 787 F.2d at 1338. *Canjura–Flores* explains the proper rule to be applied in this case. There we said:

> Our decision is not a presumption in favor of testimony given by aliens petitioning for withholding or asylum. The question of credibility remains with the Immigration Judge in the first instance, and with the Board as outlined in our previous decisions. We will continue to remand to the Board for credibility findings when we reverse a decision in which the Board has avoided the credibility issue by holding that a petitioner has failed to establish either a well-founded fear of persecution or a clear probability of persecution even if his testimony is assumed to be credible, or when the basis of the Board's decision cannot be discerned from the record. When the decisions of the Immigration Judge and the Board are silent on the question of credibility, however, we will presume that they found the petitioner credible.

*Canjura–Flores*, 784 F.2d at 889 (citations omitted) (footnote omitted). *Damaize–Job* and the majority seized on the last sentence. It is the first part that applies here. The Board "avoided the credibility issue" by ruling as a matter of law that Maldonado did not qualify for withholding of deportation. They were wrong. Accordingly, we should remand for credibility determinations. *Id.; see also Garcia–Ramos v. INS*, 775 F.2d 1370, 1374–75 (9th Cir.1985); *Argueta v. INS*, 759 F.2d 1395, 1397–98 (9th Cir.1985). This is not a game where an incorrect understanding of the law by the fact finder results in automatic granting of relief. Such a rule would require inefficient use of limited resources. The Board would have to make credibility determinations in every case regardless of

whether they are needed. This is no small burden. When the IJ and Board pass on a petitioner's credibility, they must offer " 'specific, cogent reason[s],' " *Vilorio-Lopez*, 852 F.2d at 1141, *quoting Turcios v. INS*, 821 F.2d 1396, 1399 (9th Cir.1987), or a "legitimate, articulable basis," *Damaize-Job*, 787 F.2d at 1338, for their determinations. Therefore, the majority's rule is not and cannot be the law.

The majority's credibility finding is also at odds with the record. Though not necessary to its decision, the IJ questioned Maldonado's credibility. The IJ stated: "The evidence given by the respondent, his testimony, and from his demeanor and from statements given to [sic] him at various times, I do not find the respondent credible on many of the items that he's brought up." Yet the majority presumes Maldonado to be credible. Furthermore, there are numerous discrepancies between Maldonado's various renditions of his story. For example, at his hearing before the IJ, Maldonado testified that he and his friend were captured by the guerrillas. Yet in his statement attached to his initial asylum application, Maldonado stated that his friend was not captured but ran away when approached by the guerrillas. He also stated in his initial asylum application that he was present when his friend was recaptured and shot. But he testified before the IJ that he was not present and only had hearsay knowledge that his friend had been shot. This portion of Maldonado's story, replete with inconsistency, is integral to his claim of a well-founded fear of persecution and thus should be scrutinized. *See Vilorio-Lopez*, 852 F.2d at 1141–42; *Damaize-Job*, 787 F.2d at 1337–38. Though a fact finder has never assessed whether this story is credible, the majority would have us presume that it is. Which version, I am not sure.

I would therefore remand for a credibility determination. This is no idle exercise. Deportation proceedings were initiated against Maldonado after he was arrested and pled guilty to carrying a concealed weapon. The IJ questioned his credibility and a cursory review of the record reveals significant factual inconsistencies in his story. Certainly there is good reason for inquiry. I, for one, am not prepared to find Maldonado credible through the use of a so-called presumption. It is the fact finder, not us, who should determine in the first instance whether Maldonado is telling the truth.