**Jainulabdeen Abdul SHUKOOR aka Asurumunige Shatha Kitshiri De Silva, Petitioner,**

v.

**Richard K. ROGERS, District Director, Immigration and Naturalization Service, Respondents.**

No. CV 95–6545–RSWL(RC).

United States District Court, C.D. California.

Feb. 6, 1997.

---

Stuart I. Folinsky, Law Offices of Judith L. Wood, Los Angeles, CA, for petitioner.

Katherine M. Hikida, Assistant U.S. Attorney, United States Attorney's Office, Los Angeles, CA, for respondents.

### ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

LEW, District Judge.

Pursuant to 28 U.S.C. Section 636, the Court has reviewed the Petition and other papers along with the attached Report and Recommendation of the United States Magistrate Judge, and has made a *de novo* determination.

IT IS ORDERED that (1) the Report and Recommendation is approved and adopted; (2) Judgment shall be entered granting the petition and remanding the case to the Board of Immigration Appeals for further proceedings in accordance with this Report and Recommendation; and (3) the execution of the order of exclusion against petitioner shall be stayed pending completion of administrative

proceedings on remand, and any further consideration by this Court.

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Magistrate Judge's Report and Recommendation and Judgment by the United States mail on petitioner and counsel for respondents.

### REPORT AND RECOMMENDATION ON A FEDERAL HABEAS CORPUS PETITION

CHAPMAN, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable Ronald S.W. Lew, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California.

### BACKGROUND

### I

On September 29, 1995, petitioner Jainulabdeen Abdul Shukoor, whose true name is Asurumunige Shatha Kitshiri De Silva (Administrative Record ("AR") 99), filed the instant habeas corpus petition seeking judicial review of the decision of the Board of Immigration Appeals (BIA) denying petitioner's application for asylum and excluding him from the United States. 8 U.S.C. § 1105a(b). The petitioner challenges the BIA decision, arguing that the BIA applied an erroneous legal standard and that he has established a claim for asylum based on past governmental persecution of him for an imputed political opinion. On January 5, 1996, the petitioner filed a brief in support of his petition for habeas corpus. The respondent filed a return on February 5, 1996, and the petitioner's traverse was filed on February 20, 1996.

### II

The petitioner was born in Etul Kotte, Sri Lanka, on May 4, 1966. AR 306. He is an ethnic Sinhalese. *Id.* The petitioner was a businessman in Sri Lanka, where he and his father owned an automobile dealership and two rubber plantations. AR 165–66, 306. The petitioner was "arrested" on April 26, 1989, by the Sri Lankan army, an arm of the Sri Lankan government. AR 311. Previously, the Janata Vimukti Peramuna (JVP) or People's Liberation Front, a militant Sinhalese group dedicated to the overthrow of the Sri Lankan government, had made repeated demands of petitioner for money, and in February or March 1989, the petitioner gave the JVP approximately $40,000.00. AR 149, 151. The petitioner gave the JVP money because they had threatened his life and the lives of his family; they had also killed several friends and acquaintances in the area. AR 309.

During his "arrest," the petitioner was taken before several Sri Lankan army officers, who asked him about his JVP activities, and whether any of his family members were JVP supporters. AR 311. The army officers also accused the petitioner of being a JVP member. *Id.* When the petitioner denied this allegation, he was deemed to be lying and was beaten with a baton and a rubber hose until he became unconscious. AR 311–12. At the administrative hearing, the petitioner described this ordeal, as follows:

> I told [the army officers] that I am a businessman and that there were threats of killing me by the JVP and that I was hiding from them. They never believed what I said and they said that I was hiding because I am a JVP member and also that I had been supporting them. I tried my best to convince them, but my efforts were in vain. They said again that they did not believe what I said and that they did not care of anything. Only thing they said was that they are killing everybody who supports the JVP.

AR 312. The petitioner was released four days later after a member of Parliament contacted by the petitioner's father interceded on petitioner's behalf. AR 312–13.

In 1987, as a result of a bloody civil war involving the ethnic Tamil minority in northeast Sri Lanka, and the ethnic Sinhala majority in southern Sri Lanka, Indian troops arrived in Sri Lanka, ostensibly to keep the peace and to protect the Tamils from the

Sinhala. AR 265. In response to the arrival of the Indian troops, the JVP, a "totalitarian revolutionary group whose goals and methods have been compared to those of Pol Pot's Khymer Rouge in Camobodia," was formed. *Id.* The JVP dedicated itself to the violent overthrow of the Sri Lankan government and the expulsion of the Indian troops. *Id.* To do this, the JVP resorted to extreme forms of terrorism. AR 265, 300. In response, governmental (military and police) death squads were formed, which were sent into JVP areas, and told to do what was necessary to defeat the enemy. AR 265. These death squads responded in kind, slaying those they suspected were JVP members. AR 265, 300, 303, 400, 404, 413. It is estimated that between 25,000 and 60,000 boys and men were "disappeared" by the governmental death squads between 1989 and 1990. AR 265. Amnesty International has described as "grave" the human rights violations in Sri Lanka during this period by both the Sri Lankan security forces in the south (where petitioner lived) and the Indian peacekeepers in the northeast. AR 362–388. These grave human rights violations included arbitrary arrest and detention without trial, torture, deaths in custody, "disappearances" and extrajudicial killings. AR 362. Specifically, as in petitioner's case, the armed governmental death squads arrested and tortured, without charge or trial, thousands of people suspected of having links with the JVP. AR 367–69, 371–75.

### III

The petitioner is a native and citizen of Sri Lanka, who arrived in the United States on November 4, 1989, and applied for asylum on December 20, 1989. AR 468, 471, 474.

1. This section has since been amended and recodified as 8 U.S.C. § 1182(a)(5)(A)(i)(I–II).

2. This section has since been amended and recodified as 8 U.S.C. § 1182(a)(6)(C)(i).

3. This section has since been amended and recodified as 8 U.S.C. § 1182(a)(7)(B)(i)(I–II).

4. Although the IJ found that the petitioner was not a credible witness, the BIA did not reach the

An administrative hearing was held before Immigration Judge ("IJ") Lauren R. Mathon on May 23 and 24, 1991. On June 3, 1991, the IJ found the petitioner excludable from the United States under the following provisions of the Immigration and Nationality Act ("Act"): Section 212(a)(14)[1] (alien seeking to enter the United States to perform skilled or unskilled labor); Section 212(a)(19)[2] (alien seeking to enter United States by fraud or willful misrepresentation of fact); and Section 212(a)(20)[3] (immigrant not in possession of a valid unexpired immigrant visa or other required documentation). AR 74. In reaching these conclusions, the IJ found that the petitioner was not a credible witness.[4] The IJ made no findings regarding petitioner's claim of past persecution. The IJ did find, however, that petitioner was not eligible for asylum in that he "has not shown that a reasonable person in his position would have a well-founded fear of [future] persecution from anyone ... in Sri Lanka which the government is either unable or unwilling to control, for any of the five grounds specified in the Act." AR 83.

The petitioner appealed the IJ's decision to the BIA, which affirmed the IJ's decision to deny the petitioner's application for asylum and exclude him, finding that the petitioner "ha[d] not established past persecution or satisfied the well-founded fear [of future persecution] standard of eligibility required for asylum under section 208 of the Act." AR 2–3. The BIA found unconvincing the petitioner's claim that he was persecuted by the JVP because he was active in Sri Lanka's ruling party, the United National Party (UNP). AR 3. The BIA further determined that, considering the petitioner was a prominent businessman and landowner, the JVP's extortion of money from him was not to punish him for any political activity but to acquire

credibility issue; instead, the BIA accepted the petitioner's testimony as true. AR 2. Since review is limited to the BIA decision, and this Court may not base its decision on the IJ's findings and decision independently of the BIA decision, this Court also accepts the petitioner's testimony as true. *Hartooni v. INS,* 21 F.3d 336, 340 (9th Cir.1994); *Acewicz v. INS,* 984 F.2d 1056, 1059 (9th Cir.1993); *Castillo–Villagra v. INS,* 972 F.2d 1017, 1022–23 (9th Cir.1992); *Castillo v. INS,* 951 F.2d 1117, 1120 (9th Cir.1991).

needed financial resources. *Id.* The BIA also found that the petitioner had not shown that the JVP, which was targeted by a governmental anti-terrorist campaign, was any longer a viable terrorist threat in Sri Lanka. *Id.* These holdings are not challenged by the petitioner.

The BIA further determined that the petitioner had not shown that his April 26, 1989 arrest by the Sri Lankan army was based on his political opinion. AR 4. Specifically, the BIA found that the Sri Lankan government had "the legitimate right to investigate to determine the extent of the [petitioner's] knowledge of and participation in terrorist activities" since petitioner had given, albeit unwillingly, a large sum of money to a group opposing the government. *Id.* The BIA also found it noteworthy that the petitioner was released "after only 4 days when a member of parliament" interceded on his behalf. *Id.* The BIA concluded that the arrest and torture of petitioner, thus, was not based on the petitioner's political opinion. *Id.* Because the petitioner failed to establish grounds for asylum, the BIA found he also failed to meet the higher burden of proof for showing eligibility for withholding of deportation. *Id.* The petitioner challenges the BIA's findings regarding his past persecution by the Sri Lankan government for his imputed political opinion.

### DISCUSSION

### IV

A final order of exclusion[5] may be reviewed judicially only in a habeas corpus proceeding. 8 U.S.C. § 1105a(b); *El Rescate Legal Services, Inc. v. Executive Office of Immigration Review,* 959 F.2d 742, 746 (9th Cir.1991); *Castillo–Magallon v. INS,* 729 F.2d 1227, 1228 (9th Cir.1984). Judicial review of the BIA's decision to deny asylum is reviewed for abuse of discretion. *Prasad v. INS,* 101 F.3d 614, 616 (9th Cir.1996); *Rodriguez–Matamoros v. INS,* 86 F.3d 158, 160

(9th Cir.1996). Findings of fact are reviewed under the substantial evidence standard, considering the administrative record as a whole. 8 U.S.C. § 1105a(a)(4); *INS v. Elias–Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 815, 117 L.Ed.2d 38 (1992); *Singh v. Ilchert,* 63 F.3d 1501, 1506 (9th Cir.1995). Questions of law, however, are reviewed under the de novo standard. *Singh,* 63 F.3d at 1506; *Urbina–Mauricio v. INS,* 989 F.2d 1085, 1087 (9th Cir.1993); *Maldonado–Cruz v. United States Dept. of Immigration & Naturalization,* 883 F.2d 788, 791 (9th Cir.1989). Yet, deference is given to the Immigration and Naturalization Service's ("INS") own interpretation of the Act. *Urbina–Mauricio,* 989 F.2d at 1087; *Ramirez–Ramos v. INS,* 814 F.2d 1394, 1396 (9th Cir.1987).

Asylum or refugee status is granted only to an alien who is unwilling or unable to return to his country because of past "persecution or a well-founded fear of [future] persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1101(a)(42)(A), 1158(a); *Abedini v. INS,* 971 F.2d 188, 191 (9th Cir.1992). The applicant has the burden to demonstrate his eligibility for a grant of asylum. *Fisher v. INS,* 79 F.3d 955, 960 (9th Cir.1996) (en banc); *Acewicz,* 984 F.2d at 1061; *Castillo,* 951 F.2d at 1121. He must show that he is a refugee within the meaning of 8 U.S.C. § 1101(a)(42)(A), by establishing "either past persecution or likely future persecution." *Kazlauskas v. INS,* 46 F.3d 902, 905 (9th Cir.1995); *Acewicz,* 984 F.2d at 1061–62; *Berroteran–Melendez v. INS,* 955 F.2d 1251, 1255 & n. 3 (9th Cir.1992); *Matter of Chen,* Interim Dec. 3104 at 4–6 (BIA 1989). Persecution is "the infliction of suffering or harm upon those who differ (in race, religion or political opinion) in a way regarded as offensive." *Prasad v. INS,* 47 F.3d 336, 339 (9th Cir.1995) (citations omitted). "[A]n applicant can establish past persecution based on political opinion that the government mistakenly

---

5. "Exclusion" refers to the act of keeping undesirable aliens from entering the United States. 8 U.S.C. § 1182. An excludable alien is not subject to an "expulsion" or "deportation" procedure. *Low v. Attorney General,* 479 F.2d 820, 823 (9th Cir.), *cert. denied,* 414 U.S. 1039, 94

S.Ct. 539, 38 L.Ed.2d 330 (1973). As persons subject to exclusion under 8 U.S.C. §§ 1221–1230, these aliens are subject to "immediate deportation"; nevertheless, they are not deportable under any law of the United States. *Id.;* 8 U.S.C. § 1227(a).

imputes to [him]." *Singh v. Ilchert,* 69 F.3d 375, 379 (9th Cir.1995) (citing *Canas–Segovia v. INS,* 970 F.2d 599, 601–02 (9th Cir.1992)). To determine whether threats or violence constitute political persecution, the motivation for the persecutor should be examined. *Hernandez–Ortiz v. INS,* 777 F.2d 509, 516 (9th Cir.1985).

■ Here, the petitioner challenges the BIA's determination that he is not eligible for asylum due to his failure to establish past persecution, arguing that the evidence overwhelmingly shows his past persecution by the Sri Lankan government based on the imputed political opinion of the JVP, which violently opposed the Sri Lankan government. The petitioner does not challenge the BIA's denial of his claim for withholding of deportation, and this Court, thus, will not consider that claim. *Prasad,* 101 F.3d at 618.

The BIA determined that the petitioner had not established past persecution based on his "arrest" and torture, concluding that since the petitioner had recently given a large sum of money to the JVP, the army's suspicions were not unfounded. AR 4. Furthermore, the BIA found it significant that the petitioner was released after four days because a political official intervened on his behalf. *Id.* The BIA's rationale is not convincing.

The instant action is governed by the Ninth Circuit's opinion in *Singh v. Ilchert,* as a comparison of the facts demonstrates. In *Singh,* the applicant was a devout Sikh who was imprisoned for sheltering Sikh separatists even though the separatists had forced themselves upon the unwilling Singh family. *Singh,* 69 F.3d at 377. Despite Singh's assurances that he did not support the separatists, the police interrogated and beat Singh for two-and-a-half hours, until he lost consciousness. *Id.* The police kept Singh imprisoned for two days on this occasion; he was subsequently rearrested and imprisoned for six days. *Id.* In analyzing Singh's asylum claim, the Ninth Circuit determined that "Singh clearly was persecuted on account of imputed political opinion. Singh was tortured by the police because they thought he was a supporter of the Sikh separatists. The

police accused Singh of being a Sikh separatist and did not believe his assertions to the contrary." *Id.* at 379. Like Singh, the petitioner was forced to provide aid to an organization opposed to the government (JVP) and, thus, was accused of supporting anti-government (JVP) forces, his denials were not believed, and he was arrested and tortured for the imputed political opinions of the JVP.

■ The government argues, however, that the petitioner's arrest was based on legitimate law enforcement concern because the petitioner had given money to the JVP. This argument is without merit. Assuming that the financial support of groups opposing the government may be a legitimate law enforcement concern, the record reflects that the Sri Lankan army was not conducting a legitimate law enforcement investigation, at all. Rather, like Singh, the petitioner was questioned and beaten solely because he was forced to support an anti-government group. The petitioner was not charged with, or prosecuted for, violating Sri Lankan law. Moreover, the "arrest" and beatings ended solely because a political official intervened on behalf of petitioner, not because the "investigation" was at an end. There is, thus, a question regarding the legitimacy of the government's purpose in "arresting" petitioner, and a presumption arises that there is a political motive for the arrestee's harassment. *Singh,* 63 F.3d at 1509; *See also Ramirez–Rivas v. INS,* 899 F.2d 864, 867–868 (9th Cir.1990) ("[W]hen there is no evidence of a legitimate, prosecutorial purpose for a government's harassment of a person or group, there arises a presumption that the motive for the harassment is political."), *vacated on other grounds,* 502 U.S. 1025, 112 S.Ct. 858, 116 L.Ed.2d 766 (1992); *Blanco–Lopez v. INS,* 858 F.2d 531, 534 (9th Cir. 1988) (When a government harms or punishes someone without undertaking any "legitimate prosecutorial measures," it engages in persecution, not legitimate prosecution.)

Upon this record, any reasonable trier of fact would be compelled to conclude that the petitioner suffered past persecution because of imputed political opinion, and the BIA findings of fact to the contrary were not supported by substantial evidence, nor did

the BIA apply the correct legal standards. *Elias–Zacarias*, 502 U.S. at 481 & n. 1, 112 S.Ct. at 815 & n. 1; *Acewicz*, 984 F.2d at 1061.

Because past persecution by a government was established, "a rebuttable presumption arose that [the petitioner] had reason to fear similar persecution in the future." *Prasad*, 101 F.3d at 617; *Matter of Chen* at 4. An alien who establishes past persecution by the government is presumed to have a well-founded fear of future persecution.[6] *Prasad*, 101 F.3d at 617; *Osorio*, 99 F.3d at 932; *Gonzalez v. INS*, 82 F.3d 903, 910 (9th Cir.1996); *Matter of Chen*, at 3. This presumption may be overcome by evidence showing that since the persecution occurred, conditions have changed to such an extent that the petitioner no longer has a well-founded fear of being persecuted if he were to return. *Prasad*, 101 F.3d at 617; *Matter of Chen*, at 4. Here, since the INS did not rebut this presumption, the petitioner also is eligible for asylum under 8 U.S.C. § 1101(a)(42)(A) based on well found fear of future persecution. *Prasad*, 101 F.3d at 617; *Rodriguez–Matamoros v. INS*, 86 F.3d 158, 160 (9th Cir.1996).

## V

When it is determined that an applicant is eligible to be granted asylum, the next question is whether the applicant is entitled to asylum as a matter of discretion. 8 U.S.C. § 1158(a); *Kazlauskas*, 46 F.3d at 905; *See also INS v. Stevic*, 467 U.S. 407, 423 & n. 18, 104 S.Ct. 2489, 2497 & n. 18, 81 L.Ed.2d 321 (1984) ("Meeting the definition of 'refugee,' however, does not entitle the alien to asylum—the decision to grant a particular application rests in the discretion of the Attorney General under § 208(a)."). Therefore, this matter should be remanded to the Attorney General to determine whether to grant asylum to the petitioner. *Prasad*, 101 F.3d at 617.

## RECOMMENDATION

IT IS RECOMMENDED that the Court issue an Order (1) approving and adopting the Report and Recommendation; (2) directing that Judgment be entered granting the petition and remanding the case to the Board of Immigration Appeals for further proceedings in accordance with this Report and Recommendation; and (3) staying the execution of the order of exclusion against petitioner pending completion of administrative proceedings on remand, and any further consideration by this Court.

---

**6.** This "presumption" was codified in the 1990 asylum regulations. *See* 8 C.F.R. § 208.13(b)(1)(I). Those regulations, however, do not apply to the petitioner because he filed his asylum application before they became effective, 8 C.F.R. § 208.1(a) (1994), but *Matter of Chen* does apply, and was binding on the BIA. *Osorio*

*v. INS*, 99 F.3d 928, 932 & n. 1 (9th Cir.1996). In *Matter of Chen*, the BIA recognized that "a rebuttable presumption arises that an alien who has been persecuted by his country's government has reason to fear similar persecution in the future." *Matter of Chen*, at 3.