Konstantin Vladimirovich **KAPTSOV**, Petitioner,

v.

John **ASHCROFT**, Attorney General, Respondent.

No. 02–70755.

INS No. A78–678–867.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 12, 2003.

Decided May 1, 2003.

Before LEAVY, RYMER, and PAEZ, Circuit Judges.

## MEMORANDUM *

Konstantin Vladimirovich Kaptsov (Kaptsov) petitions for review from the dismissal of his appeal by the Board of Immigration Appeals (BIA) denying his request for asylum, withholding of removal, and relief under the Convention Against Torture. We have jurisdiction pursuant to INA § 242, 8 U.S.C. § 1252, and we deny Kaptsov's petition.

### I

Kaptsov argues he is eligible for asylum because of a well-founded fear of persecution in Russia on account of his desertion from the Russian army over his opposition to Russia's military involvement in Chechnya. While Kaptsov's subjective fear that he will be persecuted is genuine, the record shows that he simply stopped showing up for work without telling Russian officials why he had done so. There is no basis for concluding that the Russian military would have perceived, or would classify, his desertion as an expression of political opinion or as a desire to stay politically neutral. Although Kaptsov testified that the military came looking for him at his parents' house, officials sought Kaptsov to require him to complete his

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

military commitment. Kaptsov lived and worked in the area for five years without difficulty. He obtained a Russian passport and student visa because he wanted to continue his education in the United States. Kaptsov's testimony shows that he initially intended to return to Russia because he believed that conditions would improve after the elections, but that they have deteriorated instead.

■ Kaptsov relies on *Navas v. INS,* 217 F.3d 646 (9th Cir.2000), to argue that Russian authorities would impute a political opinion to him, but *Navas* is factually distinguishable, as are other cases where imputation of political opinion is based on persecution of family members. *Cf., e.g., Ramirez Rivas v. INS,* 899 F.2d 864, 865–66 (9th Cir.1990) (six cousins, two brothers, two uncles and a half-brother who had engaged in guerilla activities had been tortured and imprisoned, and the petitioner's politically neutral father had been shot after she left the country); *Mgoian v. INS,* 184 F.3d 1029, 1033 (9th Cir.1999) (many relatives were victims of attacks by the government and surviving family had to leave under threat); *Rodriguez v. INS,* 841 F.2d 865, 870–71 (9th Cir.1987) (brutal murders of father and two brothers). Despite the fact that Kaptsov's application states that his brother was arrested for refusing to kill innocent civilians in Chechnya, and that his father lost his job as a police captain for disagreeing with a superior about the Chechan war, Kaptsov's testimony indicates that he does not know whether his brother was arrested and that his father cannot work because he has tuberculosis. Further, Kaptsov failed to explain in his testimony why his father had a conflict with his superiors.

In sum, the record lacks evidence that persecution on account of political opinion, or imputed political opinion, is a reasonable possibility. *Singh v. Ilchert,* 63 F.3d 1501, 1506 (9th Cir.1995). Substantial evidence supports the BIA's conclusion, and a contrary finding is not compelled. *See Sangha v. INS,* 103 F.3d 1482, 1487 (9th Cir.1997) (noting that petitioner must show that the evidence compels a reversal of the BIA).

## II

Because Kaptsov failed to establish the lower statutory burden for asylum, he necessarily failed to demonstrate eligibility for withholding of deportation. *See Pedro–Mateo v. INS,* 224 F.3d 1147, 1150 (9th Cir.2000) (citing *Ghaly v. INS,* 58 F.3d 1425, 1429 (9th Cir.1995)).

## III

■ Kaptsov argues that he is eligible for protection under the Convention Against Torture (Convention) because under the Convention he need not show a nexus between his probable torture and any statutory ground for asylum. Regardless, as the BIA concluded, Kaptsov failed to show that it is more likely than not he would be tortured if he returned to Russia. *See* 8 C.F.R. § 208.16(c)(2) (noting that burden of proof is on petitioner seeking withholding of removal under the Convention to show that it is more likely than not he or she would be tortured if removed to proposed country of removal). Kaptsov remained in Russia for five years following his desertion without being apprehended or subjected to penalty, and there is substantial evidence that only some criminal proceedings have been initiated against deserters.

PETITION DENIED.

PAEZ, Circuit Judge, dissenting.

The majority concludes that Kaptsov is ineligible for asylum and withholding of deportation because "the record lacks evi-

dence that persecution on account of political opinion, or imputed political opinion, is a reasonable possibility." I cannot agree with this characterization of the evidence in the administrative record, nor do I agree that Kaptsov was required to verbalize his political opinion to those he believed would persecute him in order to establish that his well-founded fear of persecution is "on account of" his political opinion. Instead, I would grant the petition and, like the dissenting Board member, I would conclude that Kaptsov is eligible for a grant of asylum because his desertion established his political neutrality. As expressed by the dissenting Board member, Kaptsov's desertion "was a clear manifestation of his desire to avoid participating in the atrocities which were being committed by the Russian troops" and, in my view, there is a reasonable possibility that Kaptsov would suffer persecution on account of his neutrality if he is forced to return to Russia.

In order to establish eligibility for asylum, Kaptsov must establish that he would suffer persecution in Russia on account of his political opinion. Focusing on cases where the basis for imputation of political opinion was the persecution of family members, the majority concludes that the uncertain fate of Kaptsov's family members could not constitute a reasonable basis upon which the Russian military would impute a political opinion to Kaptsov. In so doing, the majority fails to analyze an alternative basis upon which to establish Kaptsov's political neutrality.

We have held that political neutrality can be a "political opinion" for the purposes of evaluating a request for asylum. See *Maldonado–Cruz v. INS*, 883 F.2d 788, 791 (9th Cir.1989); *Bolanos–Hernan-*

*dez v. INS*, 767 F.2d 1277, 1286 (9th Cir. 1984). We also have recognized that military desertion as a conscientious objector, in order to avoid participating in acts condemned by the international community as contrary to the basic rules of human conduct, establishes an applicant's political neutrality. See *Barraza Rivera v. INS*, 913 F.2d 1443, 1451–52 (9th Cir.1990) ("punishment based on objection to participation in inhuman acts as part of forced military service is 'persecution' within the meaning of 8 U.S.C. § 1101(a)(42)(A).");[1] *Ramos–Vasquez*, 57 F.3d at 864. Indeed, the BIA has recognized that conscientious objectors include a class of persons who are not opposed to military service generally, but have been placed in a position that requires them to betray their conscience by engaging in inhuman conduct and refuse to engage in such conduct:

> [I]t is not persecution for a country to require military service of its citizens. Exceptions to this rule may be recognized in those rare cases where a disproportionately severe punishment would result on account of of the five grounds enumerated in section 101(a)(42)(A) of the Act, or where the alien would necessarily be required to engage in inhuman conduct as a result of military service required by the government.

*Matter of A–G,* 19 I. & N. Dec. 502, *506, 1987 WL 108955 (BIA 1987)(internal citations omitted). See also *Barraza,* 913 F.2d at 1451 (noting that the Office of the United Nations Commissioner for Refugees' *Handbook on Procedures and Criteria for Determining Refugee Status* ¶¶ 170, 171 (1979), which we consult for "assistance in understanding many concepts related to our immigration laws," *Hernandez–Ortiz v. INS,* 777 F.2d 509, 514 n. 3 (9th Cir.

---

1. Although *Barraza's* conclusion was based in part on "a theory of religious objection which has since been discredited, '[i]mputed political belief is still a valid basis for relief.'" *Ramos–Vasquez v. INS,* 57 F.3d 857, 864 (9th Cir.1995).

1995), advises that an alien may qualify for refugee status "after either desertion or draft evasion if he or she can show that military service would have required the alien to engage in acts 'contrary to the basic rules of human conduct.' ")

Like the petitioner in *Ramos–Vasquez,* Kaptsov was "clearly not a 'draft evader.' " 57 F.3d at 864. He served in the military for approximately two years before he was informed that his unit would be sent to Chechnya, and only then did he refuse to fulfill his contractual obligation to the military. The administrative record reveals that the Russian military conducted a campaign in Chechnya from 1994 to 1996 and that it demonstrated little respect for basic human rights throughout that campaign. Kaptsov clearly indicated that he was against the "unfair war" in Chechnya in his asylum application because "a lot of innocent people were being killed by Russian soldiers." On the basis of the evidentiary record, I would conclude that the timing of his action and his change of heart, from a dutiful citizen in the process of completing his contractual military service to an individual who abandoned his obligations, were clear expressions of his refusal to participate in the Chechnyan conflict. His refusal to serve in Chechnya was a manifestation of his neutrality. *See Maldonado–Cruz v. INS,* 883 F.2d 788, 789, 791 (9th Cir.1989) (stating that a political asylum applicant manifested his neutrality by escaping from guerilla camp three days after the guerillas forcibly recruited him into service); *Barraza,* 913 F.2d at 1446, 1449 (holding that although petitioner did not verbally communicate his opposition to the military's order, petitioner still established eligibility for asylum because he abandoned military service and fled the country to avoid participating in an inhuman act); *Ramos–Vasquez,* 57 F.3d at 863 (holding that after being punished for repeated refusals to execute military deserters, the petitioner expressed a political opinion by deserting his military unit). The majority's conclusion regarding the lack of evidence upon which to impute a political opinion to Kaptsov fails to address these facts, and therefore conflicts with our case law.

Further, the evidence in the record compels the conclusion that Russian military officials will likely persecute Kaptsov if he is forced to return to Russia. Although the majority states that there is "substantial evidence that only some criminal proceedings have been initiated against deserters," the administrative record contains evidence showing that military officials frequently commit extra-judicial killings and that their judgments are elevated above the law. *See* U.S. Dept. of State, *Country Report on Human Rights Practices* 1–2 (Feb. 2001) ("Country Report"). The Country Report also reveals that prison conditions are extremely harsh and frequently life threatening. *Id.* Further, the record indicates that desertion rates rose following the 1994–96 campaign in Chechnya and that criminal proceedings have been initiated against deserters. U.S. Dept. of State, *Russia—Profile of Asylum Claims and Country Conditions* 20–21 (Nov. 1997). On the basis of the record evidence, and in view of the renewed warfare and human rights abuses in Chechnya since August 1999, *see* U.S. Dept. of State, *Country Report on Human Rights Practices* 13 (Feb. 2001), I would conclude that Kaptsov has a well-founded fear of being persecuted in Russia for his political neutrality.

The fact that Kaptsov did not leave Russia for five years following his desertion does not change my conclusion, as I disagree with the majority's determination that Kaptsov was able to live and work in the area for five years "without difficulty," thereby negating an objective basis for his

well-founded fear of persecution. As the record reflects, however, Kaptsov had to move out of his home and have friends hide him in apartments for the entire five-year period, that up to 1999, the military authorities visited his parents' home "so many times I can't even count" and that they continue to come looking for him "as of today," that Russian authorities have tapped his parents' telephone and interfered with his parents' ability to receive mail from or send mail to Kaptsov, and that he had to bribe an official in order to leave the country.

The fact that Kaptsov was able to work in the area after he deserted the military does not undermine Kaptsov's fear of future persecution. As he explained, "you tell people that you want to work and that's it. They just pay you cash, nobody asks you questions about whether you are in the army, whether (indiscernible) is looking for you, or any other questions. They just, you work and they pay." He also testified that he did not have to be registered to work and that he had four or five different jobs during those five years. Although this evidence is informative, it does not, in my view, denigrate Kaptsov's fear of persecution should he be forced to return to Russia.

Kaptsov's situation is therefore strikingly similar to the asylum claim we faced in *Ramirez Rivas v. INS*, 899 F.2d, 864, 870–71 (9th Cir.1990). There, we held that Ramirez's ability to remain relatively unharmed while she prepared to leave the country was of only "marginal probative value." We noted that Ramirez attempted to avoid government officials and there was no evidence that those officials had been removed from their positions of power or that they had decided that Ramirez was in fact not a guerilla supporter. *See*

*also Damaize–Job v. INS*, 787 F.2d 1332, 1336 (9th Cir.1986) (holding that asylum applicant's ability to remain in Nicaragua unharmed for two years and to obtain a passport prior to departure did not constitute substantial evidence that the applicant lacked a well-founded fear of persecution, as he remained in the country because he thought his family members had been arrested and might need his help and he feared for his life during that time). The fact that Kaptsov successfully avoided detection by Russian military officials and that he managed to live and work in Russia for five years after his desertion from the military is of only "marginal probative value" in determining whether he has a well-founded fear of persecution. Thus, in my view, Kaptsov's credible testimony, in light of all the other evidence in the record, compels the conclusion that he has a well-founded fear of persecution. Therefore, I would conclude that Kaptsov is eligible for asylum and would grant his petition for review.

I also believe the evidentiary record demonstrates that there is a clear probability that Kaptsov, as a military deserter, would be persecuted upon his return to Russia. Thus, I would also conclude that Kaptsov is entitled to withholding of removal. Withholding of removal is mandatory if an "alien's life or freedom would be threatened [in the country of origin] on account of race, religion, ... or political opinion." 8 U.S.C. § 1231(b)(3)(A). Although the standard is more rigorous than the well-founded fear standard for granting asylum, *compare INS v. Stevic*, 467 U.S. 407, 424, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984) *with INS v. Cardoza–Fonseca*, 480 U.S. 421, 449, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987), I believe the record establishes a clear probability that Kaptsov will suffer persecution is he is forced

to return to Russia.[2]

For all the above reasons, I respectfully dissent.

2. Because I would grant Kaptsov's petition with respect to asylum and withholding of removal, it is not necessary to address Kaptsov's claim for withholding of removal and/or deferral of removal under Article 3 of the United Nations' Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment, opened for signature February 4, 1985, S. Treaty Doc No.

100–20, at 20 (1988), 23 I.L.M. 1027, 1028 (1984).

